625 A.2d 616

COMMONWEALTH of Pennsylvania, Appellee,

v.

William G. BOYLE, Appellant.

Supreme Court of Pennsylvania.

Argued March 13, 1992.

Decided May 26, 1993.

John F. Hooper, Pittsburgh, for appellant.

Ernest D. Preate, Jr., Atty. Gen., Robert A. Graci, Chief Deputy Atty. Gen., Mary Benefield Seiverling, Roseann B. Termini, Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

William G. Boyle appeals from his conviction on seven counts of failing to file Pennsylvania sales tax returns after a jury trial. He was sentenced to a term of imprisonment of not less than two months or more than six months and to pay a fine of $1,000.00 and the costs of prosecution on the first count. On each of the remaining six counts, he was sentenced to pay a fine of $1,000.00 with any additional imprisonment sentence suspended.

The twenty-eight count criminal information originally filed against Boyle in Crawford County included fourteen counts for the willful failure to file sales tax returns and fourteen counts for the willful failure to remit sales taxes due between August, 1982 and October, 1983, in violation of Section 268(b) of the Tax Reform Code of 1971, 72 P.S. § 7268(b). Boyle was charged as the owner and operator of Meadville Foods, Inc., doing business as Palace Fine Foods Restaurant, and as the individual responsible for the preparation and filing of the Pennsylvania sales tax returns for the business. Boyle filed an omnibus pre-trial motion challenging, inter alia, the jurisdiction of the Crawford County Court of Common Pleas over the charges, and sought dismissal of the information. The trial court denied the motion. The Superior Court granted Boyle's petition for review and reversed the trial court's order.

*Commonwealth v. Boyle,* 347 Pa.Super. 602, 500 A.2d 1221 (1985). We granted the Commonwealth's petition for allowance of appeal and reversed, holding that jurisdiction was proper in Crawford County where all of the acts giving rise to the obligation to file returns and remit taxes were performed. *Commonwealth v. Boyle,* 516 Pa. 105, 532 A.2d 306 (1987).

On remand, Boyle filed additional pre-trial motions challenging the constitutionality of the statute under which he was charged and the sufficiency of the criminal information. The motions were denied by the trial court. On March 7, 1988, the Commonwealth filed an amended information which deleted seven of the counts of willful failure to file sales tax returns, but reasserted the remaining seven counts and the fourteen counts for the willful failure to remit sales taxes. After his arraignment, Boyle again filed motions challenging the statute and the information which were denied.

The evidence introduced at trial established that Boyle, an attorney, incorporated Meadville Foods, Inc. in 1971 for the operation of a restaurant business in which he intended to involve his handicapped daughter and his father-in-law, a retired food service employee. Boyle was the corporate president and owned all of the corporate stock. The restaurant opened in 1972 and the corporation applied for and received a state sales tax license from the Department of Revenue.

The operation of the restaurant was handled by a manager who collected the sales taxes and deposited the funds into a corporate bank account. During the relevant time period, the manager was not a signatory to the account and did not prepare the sales tax returns for the business. The returns were either forwarded to Boyle or sent directly to him by the Department of Revenue for filing and payment of the taxes.

The restaurant began experiencing financial difficulties in the early 1980's. Sales taxes were collected by the restaurant between June, 1982 and September, 1983, but were not remitted to the Department of Revenue until after the filing of the criminal charges. The Department of Revenue began an audit of the corporate sales tax returns in February of 1983 for the

period commencing in March, 1980. Randall Scott, a revenue field auditor, met with Boyle on March 4, 1983, and Boyle provided corporate records for Scott to review. Boyle acknowledged that he was tardy in filing the corporation's sales tax returns and in remitting the payments. Scott explained that the records would not be reviewed until he received the sales tax returns. Two weeks later, Boyle submitted thirteen returns for Scott to review. Additional returns covering more than a one-year period were completed within two months.

The time period covered by Scott's audit was from March, 1980 through February, 1983. All of the delinquent returns due during that period were completed by April 28, 1983. No returns were filed for the period from March, 1983, through September, 1983, the time period for which Boyle was convicted.

Boyle was acquitted of the fourteen counts for the willful failure to remit sales taxes and convicted of the seven counts for the willful failure to file sales tax returns. Post-trial motions and a motion to modify the sentence were denied by the trial court. The Superior Court affirmed the judgment of sentence on appeal. 394 Pa.Super. 513, 576 A.2d 967.

We granted the petition for allowance of appeal filed by Boyle primarily to address his constitutional challenge to Section 268(b) of the Tax Reform Code of 1971. Prior to the oral argument on this appeal, Boyle filed a motion with this Court requesting that the matter be remanded to common pleas court for the filing and consideration of a motion for a new trial based on after-discovered evidence. The basis of the motion for a new trial is Boyle's discovery of a one-page handwritten document on a Department of Revenue form entitled "Narrative Report of Audit Findings." The handwritten document refers to extensions of time granted by the auditor for the filing of the sales tax returns. Boyle asserts that this evidence was not provided to him as requested in discovery proceedings and was material to his defense. At trial, Boyle had testified that he did not file the remaining 1983 returns because he believed the audit was still in prog-

ress and he intended to continue working with Scott or his successor to bring the tax filing and payments up-to-date.

For the following reasons, we conclude that Section 268(b) of the Tax Reform Code of 1971 is not unconstitutionally vague. We must vacate the judgment of sentence and remand the matter for a new trial, however, based upon the after-discovered evidence of the auditor's handwritten notes.

Prior to its amendment in 1991, Section 268(b) provided, in relevant part:

> " . . . any person who shall wilfully fail, neglect or refuse to file any return or report required by this article or any taxpayer who shall refuse to pay any tax, penalty or interest imposed or provided by this article . . . shall be guilty of a misdemeanor. . . ."

72 P.S. § 7268(b).[1] Boyle asserts that Section 268(b) is unconstitutionally void for vagueness since it does not define the point in time that a taxpayer becomes liable for a failure to file sales tax returns, and it fails to clearly identify the persons who are responsible for such filings. Boyle claims that the statute fails to give adequate notice of its requirements to individuals who may be subject to criminal prosecution thereunder because the statute does not specifically state the date for filing the returns as an element of the criminal enforcement provisions.

In making this argument, Boyle contrasts Section 268(b) with a federal criminal enforcement provision, Section 7203 of the Internal Revenue Code, which provides:

> Any person required under this Title to pay any estimated tax or tax, or required by this Title . . . to make a return, . . . who willfully fails to pay such estimated tax or tax, [or] make such return, . . . at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor. . . .

---

1. Section 268(b) now provides, in relevant part, that " . . . any person who shall wilfully fail or neglect to timely file any return or report required by this article or any taxpayer who shall refuse to timely pay any tax, penalty or interest imposed or provided for by this article . . . shall be guilty of a misdemeanor. . . ."

26 U.S.C. § 7203. Boyle maintains that Section 268(b) does not include a timeliness element because it does not contain language similar to the language "at the time or times required by law or regulations" of the federal provision. The Superior Court's decision in *Commonwealth v. Sacco*, 366 Pa.Super. 261, 531 A.2d 1 (1987), is cited in support of this argument.

In *Commonwealth v. Sacco*, the Superior Court overturned the conviction of a restaurateur for failing to file sales tax returns and failing to remit sales taxes pursuant to Section 268(b). The Superior Court held that the restaurateur did not violate the statute because the returns were filed and the taxes were paid prior to the institution of the criminal proceedings. The criminal charges were brought against the restaurateur nearly two years after the returns were filed and the taxes were paid.

The Superior Court compared the statutory provisions governing non-criminal sanctions in the form of interest and penalties, 72 P.S. §§ 7265 and 7266, with the criminal sanctions under Section 268(b). The Superior Court held that the restaurateur's conduct was tardiness and did not fall within the conduct proscribed by the legislature in Section 268(b). The Superior Court perceived a legislative distinction between tardiness, for which only monetary sanctions may be imposed, and nonfeasance, for which criminal sanctions may be sought.

The Superior Court's discussion extended beyond simply drawing a distinction between tardiness and nonfeasance, however.[2] The court stated,

2. In the instant case, the Superior Court characterized its discussion of the timeliness requirement in *Sacco* as dicta. The *Sacco* analysis was in fact refined in its later decision in *Commonwealth v. Perlman*, 392 Pa.Super. 1, 572 A.2d 2 (1990). In *Perlman*, the appellant did not file the tax returns or remit payment until after he was advised that a criminal investigation was underway. The Superior Court distinguished *Perlman* from *Sacco* on the basis that the evidence established that appellant's conduct resulted not from mere tardiness, but from a willful refusal to file the returns and taxes. The Superior Court concluded that the evidence was sufficient to support a conviction under Section 268(b), stating that " . . . although appellant's 'compliance' occurred before the *formal* institution of charges against him, it

The Commonwealth argues that section 7268(b) should be construed as requiring the "timely" filing and remittance of taxes. In other words, it would have section 7268(b) read: "any person who shall wilfully fail, neglect or refuse to file any return or report required by this article [at the time or times required by law] or any taxpayer who shall refuse to pay any tax, penalty or interest imposed or provided for this article [when due], . . . shall be guilty of a misdemeanor."

The Commonwealth provides no persuasive authority for judicial alteration of statutorily defined criminal conduct. Its reliance on 18 Pa.C.S. § 105 is seriously misplaced. Section 105 provides that "[t]he provisions of this title shall be construed according to the fair impact of their terms." The official comment explains that the section alters the common law rule that definitions of criminal conduct must be strictly construed.

* * * * * *

The Commonwealth's argument is flawed in that it asks us to supply omitted language, not to give existing language its fair meaning. Appellant's conduct, tardiness, does not fall within the conduct proscribed by the legislature in 72 P.S. § 7268(b), which sets forth a carefully defined *crime.*

366 Pa.Super. at 262–263, 531 A.2d at 1–2 (emphasis supplied). Boyle asserts that the Superior Court's refusal to read a timeliness requirement into Section 268(b) renders the provision constitutionally suspect because there is no meaningful distinction between a "merely tardy" taxpayer and one who is "truly delinquent."

 We must reject this contention, however. The distinction between the statutory provisions for civil sanctions and the criminal sanctions imposed under Section 268(b) does not focus upon the element of timeliness. The timeliness

occurred only *after* he was notified that a criminal investigation was proceeding. From this evidence, a fact-finder could conclude that appellant did not merely act in a *dilatory* fashion but instead filed only in response to the investigation, in an attempt to ward off the impending criminal prosecution." 392 Pa.Super. at 8, 572 A.2d at 6 (emphasis supplied).

element is unchanged under the civil or criminal penalty provisions as the relevant sections of the Tax Reform Code of 1971 specify when the returns and payments are due.[3] The distinguishing factor between the penalty provisions is the element of culpability. Criminal sanctions may be imposed under Section 268(b) only for conduct evidencing *willful* failure, neglect, or refusal to file returns or a refusal to pay taxes as required.

A criminal statute must be sufficiently certain and definite to inform an accused of acts that the statute is intended to prohibit and for which penalties will be imposed in order to comply with the due process clauses of both the Pennsylvania Constitution and the Constitution of the United States, *City of Chester v. Elam*, 408 Pa. 350, 184 A.2d 257 (1962). Section 268(b) satisfies this standard. In *Commonwealth v. Boyle*, 516 Pa. 105, 532 A.2d 306 (1987), we defined the elements of the offense of willful failure to file a sales tax return under Section 268(b) as follows:

In order to convict a person for willful failure to file a sales tax return under 72 Pa.S. [sic] § 7268(b), the Com-

3. Section 217, 72 P.S. § 7217, relating to the time for filing returns, provides:

(a) **Quarterly and Monthly Returns:**

(1) For the year in which this article becomes effective and in each year thereafter a return shall be filed quarterly by every licensee on or before the twentieth day of April, July, October and January for the three months ending the last day of March, June, September and December.

(2) For the year in which this article becomes effective, and in each year thereafter, a return shall be filed monthly with respect to each month by every licensee whose total tax reported, or in the event no report is filed, the total tax which should have been reported, for the third calendar quarter of the preceding year equals or exceeds six hundred dollars ($600). Such returns shall be filed on or before the twentieth day of the next succeeding month with respect to which the return is made. Any licensee required to file monthly returns hereunder shall be relieved from filing quarterly returns.

Section 222, 72 P.S. § 7222, relating to the time of payment, provides:

(a) **Monthly, Bimonthly and Quarterly Payments.** The tax imposed by this article and incurred or collected by a licensee shall be due and payable by the licensee on the day the return is required to be filed under the provisions of [§ 7217] and such payment must accompany the return for such preceding period.

monwealth must first establish that he is a person *required* to file a tax return and that he failed to act, in violation of his legal duty. The acts which give rise to a legal duty or obligation to file a return consists of maintaining a business at some location within the Commonwealth, and making taxable sales at that location. If these affirmative acts have not taken place, there can be no obligation to file a tax return. The obligation to file is a necessary prerequisite to the crime of failure to file.

While it is true that no crime is committed until the person fails to file the return, all of the acts giving rise to the obligation to file must first exist. These acts are then *essential* to the crime and not merely incidental thereto. They are parts of the offense.

516 Pa. at 114, 532 A.2d at 310 (emphasis supplied).

■ We must also reject Boyle's argument that the statute is unconstitutionally vague in defining the precise scope of a person's legal responsibility to file sales tax returns. Section 215 of the Tax Reform Code, 72 P.S. § 7215, provides that, "Every person required to pay tax to the department or collect and remit tax to the department shall file returns with respect to such tax." The word "person" is defined in Section 201(e), 72 P.S. § 7201(e), as:

> Any natural person, association, fiduciary, partnership, corporation or other entity, including the Commonwealth of Pennsylvania, its political subdivisions and instrumentalities and public authorities. Whenever used in any clause prescribing and imposing a penalty or imposing a fine or imprisonment, or both, the term "person", as applied to an association, shall include the members thereof and, as applied to a corporation, the officers thereof.

The statutory provisions give explicit notice that the officers of a corporation are persons under a legal duty to file sales tax returns on behalf of the corporation and are subject to the penalties of fine and/or imprisonment for the failure to do so.[4]

---

4. In addition to his constitutional challenges to Section 268(b), Boyle raises the following issues: (1) whether the original and amended

We now turn to Boyle's motion requesting that the matter be remanded to the trial court for the filing and disposition of a motion for a new trial based on after-discovered evidence. The motion for a new trial that Boyle would present to the trial court is included in the request for a remand. The basis of the motion is a one-page, handwritten document entitled "Narrative Report of Audit Findings", apparently prepared by Auditor Randall Scott. The document was not provided to Boyle in response to his discovery requests. The Commonwealth had produced only the final audit report during discovery. It was not until recently that Boyle uncovered the preliminary notes while examining the contents of several boxes of documents returned to him after the 1983 audit.

Boyle's defense to the criminal charges was that he and Scott had developed a practice during the audit of Boyle submitting tax returns and supporting documents for a certain number of the months under review; Scott would accept and review the returns, and give Boyle an extension of time to prepare additional tax returns. By this practice, Boyle prepared overdue tax returns dating back to March of 1980 which were audited by Scott. Boyle contended at trial that he delayed filing the tax returns for the March–September 1983 period believing he would have the opportunity to prepare and file the returns during the course of the audit. Boyle claimed that he was not aware that the audit period ended with the tax return due for the month of February, 1983.

criminal informations were fatally defective; (2) whether the trial court erred in denying his challenge to the jury venire; (3) whether evidence of late filings of tax returns for a period not covered by the information was improperly admitted; (4) whether the trial court erred in denying his motion for a mistrial following testimony regarding his failure to pay sales tax penalties and interest; (5) whether the evidence was sufficient to sustain his conviction; (6) whether the trial court erred in refusing to allow testimony relating to the source of payment for the sales taxes; (7) whether the trial court erred in denying requested points for change; and (8) whether the trial court abused its discretion in sentencing him without a pre-sentence investigation report. After review of each of the allegations of error, we conclude that the issues are without merit and have been adequately disposed of by the lower courts.

Boyle emphasizes the differences between Scott's handwritten notes and the final audit report. The final audit report describes Scott's meeting with Boyle on March 4, 1983 as follows:

At the March 4, 1983 meeting the taxpayer said he had the records in the car, 22 boxes full. He wanted to leave these records with the auditor at the state office building. The auditor explained this was not standard procedures (sic). The auditor told William Boyle that once the delinquent sales and use tax returns were prepared he would audit them and the taxpayer agreed. The taxpayer wanted a few weeks to prepare the returns and another meeting was set for the state office bldg Rm (sic) 104.

Scott's handwritten notes describing the meeting differ in a critical respect, stating, "The taxpayer wanted a couple of weeks to prepare the returns *and the auditor agreed.* At this time a meeting was set up for 3/22/83 at the state office bld (sic)." (emphasis added.) The handwritten notes also state that all of the returns submitted by Boyle at the meeting on March 22, 1983, were accepted as correct for taxed receipts. The final audit report did not include this information.

■ After-discovered evidence is the basis for a new trial when the evidence: (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching the credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Colson,* 507 Pa. 440, 469, 490 A.2d 811, 826 (1985) (citation omitted.), cert. den., 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Applying this standard, we are satisfied that the discovery of the auditor's handwritten notes warrants a new trial in this case.

■■ The Commonwealth's argument that the document was not after-discovered evidence because Scott had returned the several boxes of documents in which the notes were found prior to trial is specious. Documents of the Commonwealth

that are placed unwittingly into a defendant's possession and are not discovered prior to trial are after-discovered evidence. "Reasonable diligence" does not require a defendant to examine boxes of his own documents on the outside chance that the Commonwealth may have placed or secreted relevant evidence among the documents.

Nor are the handwritten notes merely corroborative or cumulative of the final audit report that was provided to Boyle in response to his discovery request.[5] The Commonwealth dismisses the differences between the handwritten notes and the final audit report as inconsequential. This contention is based on its assertion that there was no practice between Boyle and Scott regarding the preparation and filing of sales tax returns and time extensions. For the period of time preceding the audit, no extensions of time for the filing of the returns had been granted to Boyle. Once Scott began to audit the returns, however, time extensions were granted.

It is significant that the criminal charges for the failure to file returns did not cover the time period preceding the audit. The criminal charges covered the period from March, 1983 through September, 1983, with due dates for the returns beginning in May, 1983. At the commencement of the audit, those tax returns were not due yet. Boyle's defense to the charges was that he was unaware that the audit had been completed and believed that the practice developed with Scott during the audit would continue. The handwritten notes, which confirm the practice, were relevant to Boyle's defense and may affect the jury's verdict on remand for a new trial.

Accordingly, we vacate the judgment of sentence and remand for a new trial.

McDERMOTT, J., did not participate in the decision of this case.

---

5. There is no question that the evidence will not be used solely for impeaching the credibility of a witness.