680 A.2d 1184

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Raymond CHILDRESS, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 1996.

Decided June 26, 1996.

Reargument Denied Sept. 3, 1996.

---

38

40

Sally A. Frick, Pittsburgh, for appellant.

Scott A. Bradley, Assistant District Attorney, Pittsburgh, for appellee.

Before POPOVICH, EAKIN and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following appellant's conviction on four counts of aggravated assault and one count of criminal conspiracy. Herein, appellant contends the following: 1) He was denied due process when the trial court denied his request to sever his trial from co-defendant William "Ricky" Boyd's trial; 2) The trial court erred in admitting certain evidence because it was so expansive and prejudicial as to invalidate a fair trial; 3) The trial court erred in restricting his cross-examination of a Commonwealth witness; 4) The trial court erred in permitting Commonwealth

witnesses Tom Easley, Kevin Williams and Kelly Bell to testify that their plea agreements with the federal government contained a provision that they would testify truthfully; 5) Extrajudicial remarks made by the trial judge during trial adversely affected his right to a fair trial; and 6) The trial judge abused his discretion by sentencing him improperly in the aggravated range. We affirm.

The trial court summarized the facts in this case as follows:

Beginning in 1987, [appellant's] co-defendant, William "Ricky" Boyd, was the leader of a narcotics trafficking organization which included Childress, Kelly Bell and Will Smith among his inner circle. Members of the organization possessed firearms and used violence to further the aims of their narcotics business. In early 1990, Boyd's organization had a conflict with a rival organization headed by Eric "E-man" Jefferies. Other members of the Jefferies gang included Tom Easley, Ron Ashby, Terrell Bush and George Hilliard.

In the spring of 1990, Boyd learned that Eric "E-man" Jefferies had been purchasing cocaine from individuals other than him. In order to teach Jefferies a lesson for this "disloyalty," Boyd and Bell "ripped off" Jefferies for a large amount of cocaine. This episode prompted a full fledged turf war between the Boyd and Jefferies organizations.

In the early morning hours of December 29, 1990, Ron Ashby, a member of the Jefferies organization, shot William Boyd in the back outside of the Hollywood Club in Homewood. From this point forward, Bell, Childress and Will Smith began actively seeking members of the Jefferies organization to retaliate for the shooting of Boyd. As a part of this effort, Bell enlisted the help of his jailhouse friend, Kevin Williams.

On December 30, 1990, Bell, Childress, Williams and Smith went to the apartment of George Hilliard, another member of the Jefferies organization. Bell fired several shots through Hilliard's door, but no one was injured. Immediately thereafter, Bell, Childress, Williams and Smith went to visit Boyd in the hospital. Boyd was informed

about the shooting that day. Boyd instructed the foursome to "keep taking care of business," i.e., to continue to seek out and shoot anyone from the Jefferies organization. William Boyd was released from the hospital on January 4, 1991.

During the evening of January 8, 1991, Boyd and Childress went to the home of Kevin Williams and picked him up. There, in private before they left, Boyd offered Williams $5000 to kill Eric Jefferies and his associates. Boyd and Childress then took Williams into the car and drove around Lawrenceville, East Hills and Penn Hills pointing out to Williams the different homes and apartment buildings in which Jefferies and his associates lived.

On January 11, 1991, Boyd and Williams staked out the residence of Jefferies in Penn Hills . . . . While Boyd was taking his turn as the "lookout," Tom Easley, in his car, entered the driveway and parked. Boyd opened fire on Easley, hitting him several times. Boyd and Williams then drove away.

On January 22, 1991, Boyd and Williams returned to the Hilliard residence. After staking out the apartment for several hours, they saw several individuals getting into a car that they recognized as being Hilliard's. Williams and Boyd both shot at the vehicle, shooting three men and a child.

[Appellant] was arrested on December 28, 1992, and was charged with one count of criminal conspiracy, one count of violation of the Uniform Firearms Act and four counts of aggravated assault. Following a trial by jury, [appellant] was found guilty on the conspiracy and aggravated assault charges. He was acquitted on the firearms charge. [This appeal followed.]

■ Appellant's first allegation is that he was denied due process when the trial court denied his request to sever his trial from that of his co-defendant William Boyd. We disagree.

■ "It is well established that a motion for severance is addressed to the sound discretion of the trial court, and that its decision will not be disturbed absent a manifest abuse of

discretion." *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931, 936 (1992). Where, as was the case here, the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to all defendants, joint rather than separate trials are to be preferred. *Commonwealth v. Thomas,* 346 Pa.Super. 11, 498 A.2d 1345 (1985). Severance may nevertheless be proper where a defendant can show that he will be prejudiced by a joint trial. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991). *See* Pa.R.Crim.P. 1128.

 Appellant argues that his motion to sever should have been granted because his own defense was antagonistic to Boyd's defense, and, accordingly, he was prejudiced by the joint trial. We disagree.

> Although the possibility of conflicting defenses is a factor to be considered in deciding whether to grant severance, it is clear that more than a bare assertion of conflict is required.... [T]he mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials. Further, defenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant.

*Jones,* 610 A.2d at 936 (citations omitted).

Applying these principles to the present case, we conclude that the essence of Boyd's defense was one of his own non-participation in the crime rather than the involvement of appellant. At trial, Boyd's defense was one of alibi while appellant relied on his presumption of innocence. Boyd's alibi witnesses testified in support of Boyd's alibi defense and did not in any way implicate appellant. It was not even alleged by Boyd that appellant was present at the shootings. Accordingly, we find that appellant and his co-defendant's defenses were not antagonistic to one another. It was not necessary for the jury to disbelieve the testimony offered on behalf of appellant in order to believe the testimony of Boyd, or vice versa.

Therefore, appellant was not entitled to severance on this basis.

■ Appellant also argues that his motion for severance should have been granted because of the "spillover effect" of the evidence admitted against Boyd. We disagree.

Appellant and Boyd were charged with conspiracy. Almost all of the evidence presented at trial pertained to both of the defendants rather than just one. A severance would not have insulated appellant from most of the evidence presented at trial. Although appellant argues that a number of conversations and statements made by Boyd which were outside the scope of the conspiracy were admitted at trial, we find that any prejudice which may have resulted was cured by the lower court's jury instruction that "although there are two defendants, you should consider each defendant separately as if he were on trial on his own." N.T. 4/26/94 pp. 1251–1252.

In addition, we note that the trial in this case was a lengthy one. It consisted of ten days of testimony and argument before a verdict was reached. Forty-four witnesses testified at trial and a large record was produced. "To have conducted separate trials for each defendant would have placed a heavy burden upon the judicial system as well as the public. Accordingly, since appellant cannot show the level of prejudice required for us to find that the trial court abused its discretion in denying his motion for severance, this claim must fail." *Jones*, 668 A.2d at 502.

■ Appellant's next contention is that the trial court erred in admitting evidence which was so expansive and prejudicial as to invalidate a fair trial. Specifically, he alleges that the trial court erred in permitting the prosecutor to make references to his involvement in a "drug organization" which was ran by Boyd. Appellant argues that any such references were prejudicial because he was not charged with "dealing drugs." We note that appellant has failed to identify specifically which comments or evidence he found to be improper. However, after a careful review of the record, we find that any such references to appellant's involvement in Boyd's "drug

organization" were properly admitted to establish motive and to show the chain or sequence of events which became a part of the history of the case and formed a part of the natural development of the facts. *See Commonwealth v. Rogers,* 419 Pa.Super. 122, 615 A.2d 55 (1992) (general rule is that evidence of other offenses are inadmissible, but such evidence is legally relevant when it has the tendency to establish motive); *Commonwealth v. Murphy,* 346 Pa.Super. 438, 499 A.2d 1080 (1985) (evidence admissible to show chain or sequence of events). We further note that the lower court did not abuse its discretion in concluding that the probative value of the "drug organization" evidence outweighed any tendency to prejudice the jury. *See Commonwealth v. Scarfo,* 416 Pa.Super. 329, 611 A.2d 242 (1992) (in determining whether to admit evidence of other crimes, the trial court must balance the probative value of the evidence against its prejudice). Finally, any prejudice which may have resulted because of the admission of evidence regarding appellant's involvement in Boyd's "drug organization" was cured by the trial court's detailed cautionary instructions providing the jury with the limited purposes for which such evidence could be used. N.T. 4/14/94 pp. 111–114; N.T. 4/26/94 pp. 1277–1279.

Appellant's next argument is that the trial court erred in restricting his cross-examination of Commonwealth witness Kevin Williams regarding his attempted escape from the Indiana County Jail in July of 1993. Appellant argues that Williams' attempted escape was relevant to his credibility as a witness because it showed that "he, in effect, lied to authorities in executing his plea agreement because he then used every means to escape once he was in federal custody." Appellant's Brief p. 21. We find this claim meritless.

The scope and manner of cross-examination of a witness are within the discretion of the trial judge whose decisions will not be overturned absent an abuse of discretion. *Commonwealth v. Toro,* 432 Pa.Super. 383, 638 A.2d 991 (1994). Here, appellant was prevented from attacking Keith Williams' character by eliciting testimony on cross-examina-

tion concerning his alleged attempted prison escape. "A witness's credibility may not be impeached by prior acts of misconduct which have not led to a conviction." *Commonwealth v. Parker*, 387 Pa.Super. 415, 564 A.2d 246, 250 (1989) (citation omitted). The United States Marshals conducted an investigation into Williams' alleged attempted escape. However, no charges were ever filed against him, and he was never convicted for the alleged attempted escape. Moreover, we note that the purported evidence of misconduct was entirely collateral and had the potential to cause confusion to the jury. *See Commonwealth v. Tyler*, 402 Pa.Super. 429, 587 A.2d 326 (1991) ("The court has an obligation to keep the testimony focused on the issues in the trial and to not allow the entry of collateral matters."). Accordingly, the lower court did not abuse its discretion in refusing to permit appellant to cross-examine Williams about this matter.

■■■ Appellant's next allegation of error is that the trial court improperly permitted Commonwealth witnesses Tom Easley, Kevin Williams and Kelly Bell to testify that their plea agreements with the federal government contained a provision which stated that they would testify truthfully. We disagree.

In *Commonwealth v. Bricker*, 525 Pa. 362, 581 A.2d 147 (1990), our supreme court held that it is inappropriate for the trial court to permit a prosecutor to send plea agreements out with the jury during deliberations. However, our supreme court further held that "it is appropriate for the Commonwealth to reveal the existence of the [plea] agreements, and the [perimeters] thereof, through the testimony of the witnesses [who had entered the agreements]." *Bricker*, 581 A.2d at 155. *See Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 631 A.2d 597 (1993) (applying the rules of *Bricker*, the court found that it was appropriate for the witness to testify that he was to be given a stated sentence for giving truthful testimony).

Here, the Commonwealth did not submit the witnesses' plea agreements to the jury. Rather, the Commonwealth questioned the witnesses regarding the existence of their plea

agreements and the general provisions contained therein. Such a course of conduct is consistent with the supreme court's holding in *Bricker.* Therefore, we hold that the witnesses' testimony that they were to be given a stated sentence for giving truthful testimony was not error. *Sattazahn, supra.*

■■■ Appellant's next contention is that extrajudicial remarks made by the trial judge, the Honorable Jeffrey A. Manning, during trial adversely affected his right to a fair trial. We find that appellant has failed to preserve this issue for appeal.

On April 16, 1994, Judge Manning was a speaker at the Allegheny County Police Chiefs' Association Banquet. During his speech, the Judge made the following remarks: "I started a case on Monday that involved a bunch of people in what we call drive-by incorporated. Ricky Boyd and Raymond Childress, a bunch of people who want to shoot everybody up. And all the witnesses are drug dealers, and all the Defendants are drug dealers." Neither appellant nor his counsel became aware of Judge Manning's remarks until after the trial was completed with the entry of the guilty verdict. Upon learning of the Judge's remarks, appellant's counsel, the district attorney and Judge Manning met in the judge's chamber on June 29, 1994. After discussing the content of his speech, Judge Manning asked appellant's counsel if he wished to make a motion in regard to the remarks. He replied in the negative. Appellant was then sentenced.

Immediately following the sentencing hearing, appellant's counsel viewed Judge Manning's speech which was videotaped. At this time, neither appellant nor his counsel made any post-sentence motion concerning the Judge's remarks and his alleged appearance of impartiality. In fact, even though appellant did file post-sentence motions, the issue concerning the Judge's remarks and alleged appearance of impartiality was not raised by appellant until he appealed to this Court. The Commonwealth argues that appellant has waived this issue on

appeal by failing to file a post-trial motion for a new trial on the basis of after-discovered evidence. We agree.

In *Reilly v. Southeastern Pennsylvania Transportation*, 507 Pa. 204, 489 A.2d 1291, 1300 (1985) our supreme court held that "[o]nce [a] trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result." (citation omitted). However, in *Reilly*, our supreme court noted an exception to this rule for those cases where evidence concerning a judge's bias or impartiality was not discovered until after verdicts or judgements of sentence were decided. In *Reilly*, the supreme court stated that "rules have developed for the overturning of verdicts and judgments for after-acquired evidence. In our view, recusal motions raised after verdict should be treated no differently than other after-acquired evidence situations...." *Id.*, 489 A.2d at 1301. Accordingly, we shall treat appellant's discovery of Judge Manning's remarks as after-discovered evidence.

Pennsylvania Rule of Criminal Procedure 1410(C) indicates that "[a] motion for a new trial on the ground of after-acquired evidence *must* be filed in writing promptly after such discovery. If an appeal is pending, [when the evidence is discovered], the judge may grant the motion only upon remand of the case." (emphasis added). We note that the legislature specifically excluded the motion for a new trial based on after-discovered evidence from the optional post-sentence motion list of Pa.R.Crim.P. 1410(B).

Here, prior to sentencing, appellant and his counsel discovered that Judge Manning made remarks in public concerning appellant's case. After bringing the remarks to the Judge's attention, the Judge inquired as to whether appellant's counsel wished to file a motion in regard to the remarks. Appellant's counsel replied in the negative, failed to ask for a continuance to allow for the viewing of the Judge's speech and failed to file a motion for a new trial based on after-discovered evidence. Following sentence, appellant's counsel immediate-

ly viewed the videotape of the Judge's speech. Again, appellant failed to file any post-trial motion seeking a new trial based on after-discovered evidence, and did not raise the issue until he appealed to this Court. Accordingly, we find that appellant has waived this issue on appeal. *See Commonwealth v. Boyle,* 533 Pa. 360, 625 A.2d 616 (1993).[1]

Appellant's final contention is that the trial judge abused his discretion by sentencing him in the aggravated range.

As this is a challenge to the discretionary aspects of sentencing, appellant [was] required to include in his brief a separate concise statement demonstrating that there exists a substantial question as to the appropriateness of the sentence under the Sentencing Code. Appellant has included a separate concise statement in his brief as is required.

We will now consider whether appellant has demonstrated the existence of a substantial question that the sentence imposed is inappropriate under the Sentencing Code. Whether a substantial question exists must be determined on a case-by-case basis. It is only where a party can articulate reasons why a particular sentence raises doubts that the sentencing scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion.

We will be inclined to find that a substantial question has been put forth where an appellant advances a colorable argument that the trial court's actions were inconsistent

1. While we do not condone Judge Manning's conduct, we find that even if appellant had preserved this issue for appeal, it would be meritless. "After-discovered evidence is the basis for a new trial when the evidence ... is of such nature and character that a different verdict will likely result if a new trial is granted." *Boyle,* 625 A.2d at 622 (citation omitted). Appellant has failed to allege how the outcome of his trial would have been different had Judge Manning recused himself. "Nothing in the record indicates that appellant's trial was conducted other than in an unbiased manner. Furthermore, appellant was tried by a jury which was responsible to evaluate the testimony and arrive at a verdict." *Reilly,* 489 A.2d at 1302. Since appellant is unable to point to any partial rulings by the trial court which might have improperly affected the jury, we find his claim of judicial impartiality to be meritless.

with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Hlatky,* 426 Pa.Super. 66, 626 A.2d 575, 583 (1993) (citations omitted).

Appellant argues that the trial court relied upon an impermissible reason in sentencing him in the aggravated range on his convictions. Specifically, he argues that the trial court improperly considered his involvement in drug trafficking because he was not charged with that offense. We conclude that appellant's claim presents a substantial question. *Hlatky, supra.* However, we also conclude that the trial court did not abuse its discretion.

Appellant's involvement in drug trafficking was not the sole basis for sentencing him in the aggravated range. The transcript of the sentencing hearing and the sentencing court's order denying appellant's motion to modify sentence make clear that the sentencing court considered all statutory sentencing factors, the sentencing guidelines, appellant's character and rehabilitative needs, as well as the seriousness of the offenses and their impact on the community. *See Commonwealth v. Dotter,* 403 Pa.Super. 507, 589 A.2d 726 (1991). Moreover, the court had the benefit of and fully considered a pre-sentence report. In addition, we note that appellant's involvement in drug trafficking was a reasonable consideration in determining his sentence. There was overwhelming evidence at trial that appellant was involved with drug trafficking and that such activity was the basis for the shootings at issue. Accordingly, the sentencing judge did not abuse his discretion when he considered appellant's involvement in drug trafficking.

For all of the foregoing reasons, we affirm the lower court's judgment of sentence.

Affirmed.