SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**State v. Nirav Patel (A-64-24) (090380)**

**Argued November 17, 2025 -- Decided May 26, 2026**

**CHIEF JUSTICE RABNER, writing for a unanimous Court.**

In this appeal, the Court considers defendant Nirav Patel's claim that newly discovered evidence entitles him to a new trial.

In May 2019, defendant was indicted for theft by deception. The State asserted defendant stole $750,000 from investors who believed they were buying a 30 percent interest in a World of Beer (WOB) franchise planned for Hoboken even though defendant actually owned only 5 percent of the franchise. Defendant deposited the investors' money into an account for his family's business -- Bhagu, Inc. -- and a financial crimes investigator for the State testified the money was used to pay defendant's personal expenses, including payments for a residence and a Porsche; to cover debts for defendant's family's restaurant; and to fund checks payable directly to defendant. A jury found defendant guilty in April 2023.

Eight days after the verdict, defendant filed a motion for a new trial based on newly discovered evidence. At an evidentiary hearing, defendant's sister testified that she was "shocked" by the verdict and first began to examine boxes of documents at their parents' home days after the trial had ended. She found eleven pages in boxes in the garage that she brought to defendant's attention. Defendant then began to search his emails using terms including "World of Beer" and "Bhagu"; within an hour, he found allegedly relevant and authentic documents: two WOB franchise agreements signed by defendant and Benjamin Novello, WOB's chief development officer, that named Bhagu, Inc. as the sole franchisee for the Hoboken WOB, and an agreement stating that defendant had a 30 percent share in an entity called Tapmasters II. Novello testified that he believed the Bhagu agreements were not legitimate. Defendant maintained that the documents were authentic and exonerate him because they establish that he had the authority to sell his shares to investors in the manner he did.

The trial court granted a new trial. The court explained in part that, "[c]onsidering defendant had invested in approximately seventeen (17) businesses, the evidence was discovered among presumably thousands of documents" and thus was "not discoverable by reasonable diligence at the time of trial." The Appellate Division affirmed. The Court granted leave to appeal. 260 N.J. 467 (2025).

1

**HELD:** It is undisputed that the documents defendant relies on were in his possession leading up to his trial. He also had reason to know they existed because he not only signed some of them but also emailed them to himself. And as an experienced businessperson, he understood that corporate agreements like the ones he found are commonly written down. Despite that, defendant never searched for the documents during the four years from his indictment to trial. Under those circumstances, he cannot establish that he acted with reasonable diligence. Further, the documents raise serious concerns that a fraud on the court has been committed.

1. Under settled law, a defendant must establish three elements to prevail on a motion for a new trial based on newly discovered evidence: (1) that the new evidence is material; (2) that it was not discoverable before trial by reasonable diligence; and (3) that it would probably change the jury's verdict. State v. Carter, 85 N.J. 300, 314 (1981). Newly discovered evidence must be reviewed with circumspection to ensure it is not the product of fabrication. At the same time, newly discovered evidence can provide a safeguard for individuals who are unjustly convicted of a crime. (pp. 11-13)

2. Defendants and their attorneys cannot sit back and wait to search for evidence until after a trial has ended. They must act with reasonable dispatch before it begins. The obligation to search with reasonable diligence plainly applies when defendants possess the evidence in question. It also applies when defendants are aware of critical evidence or have reason to know it exists. Whether a defendant's search was reasonably diligent depends on the circumstances. It does not require defendants to undertake totally exhaustive or superhuman efforts. But defendants who fail to search for evidence in their possession, or evidence they know or reasonably should have known about, will have a difficult time satisfying the second prong of the Carter test. The Court explains why, under the circumstances of this case, it was an abuse of discretion to find the evidence was not discoverable through reasonable diligence before trial. (pp. 13-20)

3. The Court addresses the serious allegations of fraud related to the two Bhagu franchise agreements defendant submitted after trial. A close examination of the documents tends to support the State's claim. If a motion for post-conviction relief is filed in this case, the parties and the court should examine with care what may well be a fraud on the court. The Court does not suggest that defense counsel engaged in improper behavior. (pp. 21-23)

**REVERSED. REMANDED for sentencing.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-64 September Term 2024
090380

State of New Jersey,

Plaintiff-Appellant,

v.

Nirav Patel,

Defendant-Respondent.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 17, 2025 | May 26, 2026 |

Liza B. Fleming, Deputy Attorney General, argued the cause for appellant (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, Deputy Solicitor General, Tim Sheehan, Assistant Attorney General, and Liza B. Fleming, Regina M. Oberholzer, and Nathaniel I. Levy, Deputy Attorneys General, of counsel and on the briefs).

David J. Altieri argued the cause for respondent (Galantucci & Patuto, and Cillick and Smith, attorneys; David J. Altieri and Edward W. Cillick, on the briefs).

Ezra D. Rosenberg argued the cause for American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Ezra D. Rosenberg and Jeanne LoCicero, on the brief).

1

Defendant Nirav Patel claims that newly discovered evidence entitles him to a new trial.

In May 2019, defendant was indicted for theft by deception. The charges related to his ownership interest in a restaurant franchise planned for Hoboken. The State asserted defendant stole $750,000 from investors who believed they were buying a 30 percent interest when defendant actually owned only 5 percent. Defendant's trial began nearly four years later, and a jury found him guilty in April 2023.

Eight days after the verdict, defendant filed a motion for a new trial based on newly discovered evidence. To prevail on such a claim, a defendant must demonstrate, among other things, that the new evidence was discovered after trial and was "not discoverable by reasonable diligence beforehand." State v. Carter, 85 N.J. 300, 314 (1981).

The trial court conducted an evidentiary hearing at which defendant and his sister testified. She stated that she was "shocked" by the verdict and first began to examine boxes of documents at their parents' home days after the trial had ended. She brought certain materials to defendant's attention and, within

an hour of searching his emails, defendant found allegedly relevant and authentic documents. Defendant claims the documents exonerate him.

After the hearing, the trial court granted defendant's motion, and the Appellate Division affirmed the court's order. Yet it was undisputed that the documents in question were in defendant's possession leading up to his trial. He also had reason to know they existed because he not only signed some of them but also emailed them to himself. And as an experienced businessperson, he understood that corporate agreements like the ones he found are commonly written down. Despite that, defendant never searched for the documents during the four years from his indictment to trial. Under those circumstances, he cannot establish that he acted with reasonable diligence.

We also note that the documents defendant presented after the verdict raise serious concerns that a fraud on the court has been committed.

We therefore reverse the judgment of the Appellate Division and remand for sentencing.

## I.

We draw the following facts from defendant's trial and a post-trial hearing.

## A.

On May 8, 2019, a State grand jury returned an indictment against defendant that charged him with theft by deception in the second degree. The indictment alleged that he "obtain[ed] $750,000 from one or more investors by creating or reinforcing the false impression that [the money] would be used as an investment for a bar/restaurant franchise."

Defendant's trial began on March 28, 2023 and ended on April 20, 2023. Certain evidence related to World of Beer Franchising, Inc. (WOB), a corporation that licensed franchises for restaurants. In 2012, defendant, along with Will Mingo and Jerrid Douglas, entered into an area development agreement with WOB that granted them the rights to open twelve retail alcohol franchises in New Jersey, Pennsylvania, and later New York. According to Mingo, the partnership had a fourth partner at one point and operated under the name "Tapmasters."

Each franchise location had its own franchise agreement. An operating agreement for each location set forth each partner's ownership percentage.

Overall, defendant was involved in approximately thirty businesses. Among other entities, defendant's family business, Bhagu, Inc., had operated a restaurant in Hoboken known as The Melting Pot, which defendant's sister, Sonal Patel, had purchased. Defendant and their father, Bhagvati Patel, were

4

signatories to the restaurant's franchise agreement, and defendant was authorized to sign checks on its accounts. (We refer to defendant's family members by their first names to avoid confusion.)

The plan was to convert The Melting Pot into a WOB franchise. To accomplish that, defendant negotiated a new lease for the new entity -- WOB Hoboken. Soon after, on May 2, 2014, defendant and Mingo entered into the "Operating Agreement of Tapmasters Hoboken LLC" for the new WOB Hoboken franchise. The signed agreement listed the two partners and their respective ownership interests: Mingo had a 95 percent interest and defendant a 5 percent interest. A principal owner's guaranty dated March 25, 2015, reflected the same percentages. A principal owner's statement on the same date did so as well.

Defendant testified at trial that there was a 40/30/30 split between Mingo, himself, and Douglas, the original founders, based on the 2012 area development agreement. Without referring to any documents, defendant testified that he and Mingo had a 50-50 partnership split of WOB Hoboken once Douglas withdrew. Defendant did not recall signing any documents that reflected he owned only 5 percent.

The Tapmasters Hoboken operating agreement for WOB Hoboken provided that new investors could join the company if a majority of the voting

5

interests approved.  Capital contributions from new members were to be used only for the company's business purposes.

The State presented evidence at trial that from March to May 2014, defendant raised $750,000 from a group of six investors.  They formed an entity, HOBWOB, to invest the funds in exchange for a share of the Hoboken franchise.

Defendant deposited the investors' money into an account for his family's business, Bhagu, Inc.  A financial crimes investigator for the State reviewed the account's records.  He testified the money was used to pay defendant's personal expenses, including mortgage and car payments for a residence and a Porsche; to cover debts for The Melting Pot; and to fund checks payable directly to defendant.  According to the investigator, none of the $750,000 investment was transferred to Mingo or Tapmasters Hoboken LLC, and none of it was used for the benefit of the Hoboken WOB franchise.

In August 2014, one of the investors asked Mingo about the status of HOBWOB's investment.  Mingo testified he was "stunned" because he was unaware of the investment and had not approved it.  The next day, Mingo notified defendant in writing that he was removed as a member of Tapmasters Hoboken LLC.

On April 20, 2023, a jury found defendant Nirav Patel guilty of the single count in the indictment. His sentencing was scheduled for June 2023.

B.

On April 28, 2023, eight days after the verdict, defendant filed a motion for a new trial and a judgment of acquittal. The trial court later conducted an evidentiary hearing at which defendant and his sister Lina testified.

Lina testified that she and her family were "shocked" by the verdict and searched through boxes of documents at her parents' home in the days afterward. Lina lived there at the time. Defendant lived there full-time since 2019 as well. The documents related to various business ventures in which her family members, including her brother, were involved.

Lina testified that "[a]fter days of searching," she found eleven pages in boxes in the garage. The pages were part of franchise agreements that named Bhagu, Inc., the family's company, as the sole franchisee of the WOB project in Hoboken. According to Lina, the pages were not "all together" and had "scrap paper nonsense" on the back. Lina stated she was able to identify them because they said "Bhagu and World of Beer."

Lina stated that she showed the pages to defendant, who "thought about it" and then began to search his email accounts. He inputed different search terms, including "World of Beer," "Bhagu," and "Bhagu, Inc. franchise

agreement," and "a whole bunch of emails came up." Altogether, Lina estimated that they searched defendant's emails for about one hour and found full versions of the excerpted documents she had located. Defendant and Lina both testified that the documents were authentic.

Defendant submitted the complete documents in support of his request for a new trial. The first, attached to an email, was a WOB Franchising Agreement dated January 22, 2014, signed by defendant and Benjamin Novello, WOB's chief development officer. The agreement named Bhagu, Inc. as the sole franchisee and stated that Bhagu had paid WOB $30,000 toward a $45,000 franchise fee for the Hoboken franchise.

Defendant and his sister found and submitted a second WOB Franchising Agreement dated May 7, 2015. It also named Bhagu, Inc. as the sole franchisee for the Hoboken franchise, and defendant signed the document on behalf of Bhagu. At the hearing, defendant testified he could not recall where the document came from.

Defendant also submitted a third document, a principal owner's guaranty, that stated he had a 30 percent interest in an entity named Tapmasters II. Mingo had a 40 percent interest and Douglas a 30 percent interest in the entity. The document does not explain whether or how it relates to the Hoboken franchise or the operating agreement for Tapmasters Hoboken.

8

The document is undated; defendant testified it was attached to an April 8, 2014 email.

Novello, the WOB development officer, testified that he believed the Bhagu agreements were not legitimate. He explained that WOB kept copies of all executed franchise agreements, that he could not recall signing an agreement for Bhagu, and that a search of WOB's records did not uncover the agreements defendant produced in support of his motion. Novello also testified he would not have granted both Bhagu and Tapmasters an exclusive franchise agreement for the same location. In a certification, Novello stated he believed the Tapmasters II Guaranty was legitimate.

Defendant maintained that the documents were authentic and established that he had the authority to sell his shares to investors in the manner he did.

C.

The trial court granted defendant's motion for a new trial. To assess the new evidence presented at the hearing, the court applied the three-part standard set forth in Carter. The standard requires defendants to demonstrate that new evidence is

> (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.

[85 N.J. at 314.]

Defendants must satisfy all three elements to be granted a new trial. Ibid.

The trial court initially dispensed with the second prong: "Considering defendant had invested in approximately seventeen (17) businesses, the evidence was discovered among presumably thousands of documents."[1] "[G]iven the circumstances," the court found, the documents "were not discoverable by reasonable diligence at the time of trial."

The court also concluded that the documents were material and would probably change the jury's verdict for the reasons defendant advanced: they showed he was "a 30% owner and not a 5% owner" and "had the authority to sell shares."

Notwithstanding the new evidence, the trial court denied defendant's motion for a judgment of acquittal. The court pointed to conflicting documents and testimony the State presented at trial and concluded that a reasonable jury could have found that defendant "purposely obtained the investor's property by deception." That issue is not part of this appeal.

The Appellate Division affirmed. With regard to the requirement that a defendant must act with reasonable diligence, the court noted that a deferential

---

[1] Defendant's sister, Lina, testified defendant was involved in "30-ish" businesses. The trial court did not identify a source for the lower number.

standard of review applied to the trial court's factfinding and found "no basis to disturb" its conclusion. The appellate court also agreed that the new evidence was material and would probably change the outcome given the State's theory of the case.

D.

We granted the State's motion for leave to appeal. 260 N.J. 467 (2025). We also granted the American Civil Liberties Union of New Jersey (ACLU) leave to appear as a friend of the court.

II.

The State maintains the materials defendant submitted after trial were discoverable with reasonable diligence. The State specifically notes that defendant possessed the documents, which he had signed and emailed to himself, for the four years between his indictment and trial. In any event, the State submits the documents would not have likely changed the jury's verdict because the evidence was neither credible nor sufficiently probative.

Defendant counters that the documents were not "easily discoverable" and that locating them was like finding "a needle in a haystack." He also maintains the documents show he had the authority to raise funds for the Hoboken WOB project. Defendant disputes the State's claim that "these documents are neither credible nor probative."

11

The ACLU proposes a new standard to assess the significance of newly discovered evidence: when a "defendant had access to evidence at the time of trial but failed to produce it -- not for any strategic or tactical reasons but because of inadvertence on defendant's or defense counsel's part -- a new trial should ordinarily be ordered if the defendant meets the other prongs of the Carter test."

## III.

## A.

Motions for a new trial based on newly discovered evidence are committed to the "sound discretion" of the trial court and will not be disturbed absent a clear abuse of discretion. State v. Smith, 29 N.J. 561, 573 (1959).

Under settled law, as noted earlier, defendant must establish three elements to prevail on his motion: (1) that the new evidence is material; (2) that it was not discoverable before trial by reasonable diligence; and (3) that it would probably change the jury's verdict. Carter, 85 N.J. at 314; State v. Ways, 180 N.J. 171, 187 (2004).

We ordinarily give great weight to a trial court's determination because it "sat on the original trial" and is "in a peculiarly advantageous position to evaluate the showing made for a new trial." Smith, 29 N.J. at 573. That deference logically applies to the test's first and third prongs, which call for a

12

qualitative, comparative assessment of the evidence presented to the jury.  The

second prong, however, does not turn on the evidence's probative value.  It

focuses instead on the reasonableness of a defendant's efforts to locate the

evidence in a timely manner.  See Lopez-Martinez v. U.S. Att'y Gen., 149

F.4th 1202, 1212 n.11 (11th Cir. 2025) ("'[R]easonableness' isn't inevitably a

purely factual determination.").

In general, "[n]ewly discovered evidence must be reviewed with a

certain degree of circumspection to ensure that it is not the product of

fabrication."  Ways, 180 N.J. at 187-88; State v. Buonadonna, 122 N.J. 22, 50-

51 (1991) (declining to conclude, based on "sketchy evidence," that a new trial

was warranted).  At the same time, newly discovered evidence can "provide a

safeguard" for individuals "who are unjustly convicted of a crime."  Ways, 180

N.J. at 188.  "We would not require a person who is probably innocent to

languish in prison because the exculpatory evidence was discoverable and

overlooked by a less than reasonably diligent attorney."  Id. at 192.

### B.

The second prong of the Carter test recognizes another important

principle in a system of justice:  "that judgments must be accorded a degree of

finality."  Ibid.  Defendants and their attorneys cannot sit back and wait to

search for evidence until after a trial has ended.  They must "act with reasonable dispatch" before it begins.  Ibid.

That obligation plainly applies when defendants possess the evidence in question at the time of trial.  See, e.g., State v. Johnson, 34 N.J. 212, 222-23 (1961) (allegations of coerced confessions, if true, would have been known to defendants at the time of trial and were "not newly discovered at all"); State v. Hall, 183 N.J. Super. 224, 233 (App. Div. 1982) (alleged new evidence in possession of someone who testified at trial was not "newly discovered"); United States v. Cimera, 459 F.3d 452, 460 n.10 (3d Cir. 2006) (failure to realize the relevance of evidence in the defendant's possession did not render the evidence newly discovered; citing several Circuits in agreement); United States v. Garcia-Alvarez, 541 F.3d 8, 18 (1st Cir. 2008) (cell site data in the defendant's possession, from which his general location could have been derived, was "not new" despite counsel's failure to realize its significance); United States v. Rodriguez-Marrero, 390 F.3d 1, 29 (1st Cir. 2004) (information in a police report in the defendant's possession was not newly discovered); United States v. Castillo, 171 F.3d 1163, 1167 (8th Cir. 1999) (failure to listen to both sides of an audiotape did not render the evidence newly discovered); State v. Perez, 457 N.W.2d 448, 457 (Neb. 1990) (tape

14

recording in the defendant's possession that he first listened to after trial did not amount to newly discovered evidence).

The obligation to search with reasonable diligence also applies when defendants are aware of critical evidence or have reason to know it exists. State v. Casey, 157 N.J. Super. 311, 317 (App. Div. 1978) (affidavit submitted after trial was not newly discovered evidence when the defendant knew the affiant "possessed knowledge critical to the case" yet "made no effort whatever to secure [the person's] attendance as a witness" at trial); State v. Uranga, 950 N.W.2d 239, 242-44 (Iowa 2020) (letter that the defendant had received before trial, and was aware of, was not newly discovered evidence); Muse v. State, 748 S.E.2d 136, 141 (Ga. Ct. App. 2013) (website post that the defendant had responded to and "was necessarily aware of" was not newly discovered evidence).

Forgetting about evidence likewise does not render the evidence newly discovered. State v. Daymus, 380 P.2d 996, 997 (Ariz. 1963) ("Information within the personal knowledge of defendant does not become newly discovered evidence by reason of later recollection."); State v. Hirsch, 511 N.W.2d 69, 82 (Neb. 1994) ("[F]orgetfulness is inconsistent with the diligence required in presenting the evidence during the trial[] and . . . does not warrant a new trial on the basis of newly discovered evidence.").

15

Unusual circumstances that impede the discovery of evidence may lead to a different conclusion. In Commonwealth v. Boyle, for example, the defendant had been convicted of willfully failing to file sales tax returns. 625 A.2d 616, 618 (Pa. 1993). As part of his defense, defendant Boyle claimed he would submit tax returns and documents to a revenue auditor for several months at a time, and the auditor would give him "an extension of time to prepare additional" returns. Id. at 621.

Boyle received a final audit report, which did not mention that practice. Id. at 622. After trial, he found a single page of handwritten notes from the auditor in one of several boxes returned to him after the audit. The notes confirmed the arrangement. Id. at 621-22. In granting a new trial, the Supreme Court of Pennsylvania observed that documents "that are placed unwittingly into a defendant's possession and are not discovered prior to trial are after-discovered evidence." Id. at 622.

State v. Nash, 212 N.J. 518 (2013), presented a different type of impediment to the discovery of evidence before trial. The case involved a special-education student who testified the defendant had sexually assaulted him on several occasions. Id. at 529. Defendant Nash, a school librarian, denied the charge. He also insisted in his testimony "that he could not have committed the crime because an aide escorted [the student] around the school

16

at all times." Id. at 526. In rebuttal, the principal testified the student never had a "personal aide." Id. at 530.

After trial, "it became clear that Nash was not mistaken about the aide." Id. at 551. The principal had assigned a "classroom aide" who was not reclassified as a "personal aide" but did accompany the student. Ibid. The Court also found that trial counsel's efforts to discover the aide "were probably thwarted by" a gag order the principal had imposed, "which made people" like the aide and the special-education classroom teacher "wary of cooperating with the defense." Id. at 536, 552. The Court concluded that evidence of the aide was not discoverable through reasonable diligence before trial and granted Nash a new trial. Id. at 552-54. See also State v. Szemple, 247 N.J. 82, 100 (2021) (referring generally to "external obstacle[s]" that could prevent the discovery of evidence with reasonable diligence).

Whether a defendant's search was reasonably diligent depends on the circumstances. It does not require defendants to undertake "totally exhaustive or superhuman effort[s]." State v. Behn, 375 N.J. Super. 409, 428 (App. Div. 2005). But defendants who fail to search for evidence in their possession, or evidence they know or reasonably should have known about, will have a difficult time shouldering their burden under the second prong of the Carter test.

17

The late discovery of evidence can lead to motions for post-conviction relief as well as motions for a new trial. Ways, 180 N.J. at 192-93. Delays in both settings may render the evidence "highly suspect." Buonadonna, 122 N.J. at 50.

## IV.

Under the circumstances, we do not agree that the evidence in question was "not discoverable by reasonable diligence" before trial. Carter, 85 N.J. at 314. For the purpose of this section, we assume the evidence is genuine. Based on the record, defendant could have discovered it before trial with reasonable diligence.

Certain undisputed facts in the record undermine defendant's claim that he satisfied his burden to establish the second prong:

- The documents were in defendant's possession before trial. They were located in his parents' home, where he lived full-time as of 2019. He also had access to electronic versions of the documents in his own email accounts.

- Defendant knew the documents in question existed. He not only testified that he signed some of the documents he now relies on, but he also emailed them to his own email account.

18

- Defendant had reason to know the documents existed. He was an experienced businessperson who had been involved in approximately thirty business ventures. He knew from experience that franchising agreements, development agreements, operating agreements, partnership agreements, ownership interests, guaranties, and similar materials -- many of which he signed -- are commonly reduced to writing.

- Defendant did not search for the documents before trial. Although defendant and his sister testified they had access to a vast amount of documents, they did not search through them until <u>after</u> the jury's verdict. <u>See</u> <u>Ways</u>, 180 N.J. at 192 (noting that prong two of the <u>Carter</u> test "encourage[s] defendants and attorneys to act with reasonable dispatch in searching for evidence before the start of the trial").

- Despite the large quantity of documents, Lina testified she was able to find relevant materials in a matter of days. For his part, defendant then used basic search terms -- "World of Beer," "Bhagu," and "Bhagu, Inc. franchise agreement" -- to search his emails, and he was able to find the documents in question in an hour. He could have easily done so before trial.

Defendant offered two reasons for waiting to search his emails until after trial. First, he believed he had a strong trial defense. But a faulty trial strategy not to pursue all relevant evidence does not provide grounds for a new trial based on newly discovered evidence. Garcia-Alvarez, 541 F.3d at 18; see Ways, 180 N.J. at 192 ("A defendant is not entitled to benefit from a strategic decision to withhold evidence."). Such an approach could encourage gamesmanship and undermine finality in a jury's verdict.

Second, defendant believed he no longer had access to the email account where he later found the documents. He testified at the post-trial hearing that he "had multiple email addresses -- email accounts that are no longer -- I don't have access to them anymore." Yet he did not check whether that was true. That type of behavior similarly falls short of the diligence expected of a defendant.

In sum, defendant did not use reasonable diligence to search for the documents prior to trial. Whatever the reason, he did not search for them at all. It was therefore an abuse of discretion to find the evidence was not discoverable through reasonable diligence before trial.

Defendants must satisfy all three prongs of the Carter test to obtain a new trial. Ways, 180 N.J. at 187; Carter, 85 N.J. at 314. Because defendant failed to establish the second prong, we need not evaluate the other two.

20

We also decline to address the ACLU's proposed new standard to assess the significance of newly discovered evidence. We generally do "not consider arguments that have not been asserted by a party, and are raised for the first time by an amicus curiae." State v. J.R., 227 N.J. 393, 421 (2017).

V.

Finally, we address serious allegations of fraud related to defendant's motion. The State contends that two documents defendant submitted after trial -- the two Bhagu franchise agreements -- are "highly questionable." A close examination of the documents tends to support that concern.

To repeat, the first document, dated January 22, 2014, named Bhagu, Inc. as the sole franchisee for the Hoboken franchise and stated that Bhagu had paid $30,000 of the $45,000 franchise fee to WOB. The second document, dated May 7, 2015, also named Bhagu as the sole franchisee for the Hoboken location. The State challenges the authenticity of both items and contends the first one is identical to an unrelated franchise agreement with Tapmasters Albany, also dated January 22, 2014.

Even a layperson can notice certain common features among the documents. Among other things, they contain multiple signature blocks with what appear to be identical signatures as well as identical handwritten titles and dates.

21

In various signature blocks, for example, the handwritten phrase "Managing Partner" appears above the line for the date, "1/22/14." Looking across the documents in the State's appendices, in some places the letter "t" in "Partner" has a loop at the bottom that connects the letter's vertical and horizontal lines; in other places, there is no connecting loop. In some places, the top line of the first "r" in "partner" has an upward slant; in others, the slant is horizontal. In some, the underscored numbers in the date "1/22/14" extend below the printed line in the same way; in others, they do not.

Despite those variations across the documents, the same features appear to match up identically in the signature blocks for the January 22, 2014 WOB/Bhagu Hoboken franchise agreement and the unrelated WOB/Tapmasters Albany franchise agreement bearing the same date. And near the signature blocks on an addendum to both documents, in the same place, is what appears to be an identical, stray, handwritten mark. Yet one document is signed by Will Mingo for Tapmasters Albany, and the other bears defendant's signature for Bhagu.

The similarities lend support to the State's claim that the January 22, 2014 Bhagu agreement is not credible and was copied from another document. The State raises other questions about the agreement as well. Among other arguments, it notes that defendant testified he located the 2014 agreement in an

22

email he sent to himself in May 2015. By that time, Mingo had accused defendant of taking $750,000 from the outside investors, which the State submits provided a motive for defendant to fabricate the document.

The trial court made note of the State's allegations but pointed to the third of the new documents presented -- the Tapmasters II guaranty -- which states that defendant owned a 30 percent interest in the named entity. That document's authenticity was not challenged. But the undated document, as noted earlier, does not explain whether or how it relates to the Hoboken franchise or the operating agreement for Tapmasters Hoboken. The parties have different views on the meaning of the document.

We need not reach other arguments the State presents about the authenticity of the documents. If a motion for post-conviction relief is filed in this case, the parties and the court should examine with care what may well be a fraud on the court. We do not suggest that defense counsel engaged in improper behavior.

## VI.

For the reasons stated above, we reverse the judgment of the Appellate Division. The matter is remanded to the trial court for sentencing.

23

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.