J. S33002/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
AYODELE OKE, : No. 534 EDA 2013
:
Appellant :


Appeal from the Judgment of Sentence, January 17, 2013,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-00003220-2011


BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND STABILE, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED OCTOBER 30, 2014**

Ayodele Oke appeals, ***pro se***, from the judgment of sentence entered on January 17, 2013, in the Court of Common Pleas of Montgomery County. We affirm, as none of the issues raised in this tortuous appeal have merit.

On April 4, 2011, appellant was arrested for the armed robbery of Shawn T. Schwarz.  During the robbery, appellant held a gun to the back of the victim's head, dragged him up the stairs, smacked and choked him. Appellant threatened to shoot him and took approximately $180 from the victim.  During the robbery, appellant referred to the victim by name.  At one point, appellant pulled down the bandana that was covering his face, and the victim recognized appellant as an old high school classmate.

Appellant fled the scene and the victim escaped through an unlocked door. Initially, the victim hesitated to identify the robber to the police, but he later disclosed that appellant was responsible for the robbery. The victim stated that appellant wore white latex gloves and a grey hoodie. The gun was black and silver. Appellant was arrested and charged with robbery, burglary, possession of a firearm with intent to employ it criminally, aggravated assault, simple assault, recklessly endangering another person, criminal trespass, unlawful restraint, theft by unlawful taking, and receiving stolen property.

On May 3, 2011, a preliminary hearing was held, and the victim's testimony was consistent with what he initially told the police. However, the victim attempted to recant his identification of appellant on the stand. Detective Robert J. Walsh testified that the victim identified appellant as the robber. Furthermore, items found during the search of appellant's car corroborated the victim's account. Specifically, white latex gloves, a grey hoodie, .9 millimeter shells, and receipts for gun purchases. The receipts led the detectives to discover that appellant had purchased a Smith and Wesson .9 millimeter handgun that matched the ammunition found in appellant's car and also the gun used in the robbery. Despite the victim's attempt to recant his identification, the Honorable Harry J. Nesbitt held the charges. After the preliminary hearing, the District Attorney's office received a letter from the

victim stating that he made a mistake by incorrectly identifying appellant and requesting the Commonwealth to drop the charges.

At trial, the Commonwealth presented six witnesses. The victim testified to the events pertaining to the robbery and steadfastly maintained that appellant attempted to coerce him to change his identification. The victim stated that his letter to the District Attorney's office was also coerced by appellant. (Notes of testimony, 5/1/12 at 44-49.) The victim testified that he knew who the robber was, as he recognized appellant's voice and face from high school. (*Id.* at 211-216.)

Robert George Kostaras, Sr., the owner of Classic Pistol, testified that on October 16, 2010, he sold appellant a .9 millimeter Smith and Wesson gun that was similar to the gun used in the robbery. (*Id.* at 172-183.) Anthony Robert Fabrizio, a dispatcher at the Horsham Township Police Department, testified that while the victim was at the police station, appellant, pretending to be the victim's uncle, called to inquire about the investigation. (*Id.* at 183-188.) Pankil H. Patel, the manager of Regency Motor Inn in Warminster, Pennsylvania, testified that appellant rented a room in the motel after the robbery, although testimony was presented that he had an apartment nearby in town. (*Id.* at 189-200).

Detective James Vincenti of the Horsham Township Police Department testified that during appellant's arrest, he blurted out, "I didn't stick any gun in anybody's head for money." Appellant made this statement without

disclosure by the police that a gun was used in the robbery. (*Id.* at 203.) Finally, Detective Robert Waeltz of the Horsham Township Police Department testified regarding his conversation with the victim. Additionally, he stated that while the victim was at the police station, someone named "Uncle Jim" called three times to inquire if the victim was okay. Although the victim did have an "Uncle Jim," the uncle lived in New Jersey and would not have known where the victim was at this point in time. When the victim listened to the call, he recognized appellant's voice. Detective Waeltz testified about the items recovered during the search of appellant's car and apartment, which corroborated the victim's account. The detective also testified about his interviews with Kostaras and Patel. (*Id.* at 200-291.)

Appellant represented himself in all facets of this case, has filed an exhausting number of motions and petitions, and was noncompliant during numerous hearings. Appellant also filed numerous petitions in federal court which were all found to be meritless. With the exception of the preliminary hearing and a bail hearing, appellant represented himself despite the trial court's repeated encouragement for appellant to seek counsel. The trial court opinion provides the extensive history of its efforts to protect appellant's rights and his decision to proceed either with or without counsel. For the purpose of this memorandum, we will not recount that history. (*See* trial court opinion, 10/21/13 at 2-9.)

Following a two-day trial, the jury found appellant guilty of robbery, possession of a firearm with intent to employ it criminally, recklessly endangering another person, burglary, criminal trespass, unlawful restraint, and theft by unlawful taking; the Commonwealth had withdrawn the charges of aggravated assault, simple assault, and receiving stolen property. Thereafter, appellant was sentenced to an aggregate term of nine years and 1 month to 43 years and 11 months' imprisonment. The trial court has detailed the remaining procedural history of this case in its opinion. (*Id.* at 2-9.) This *pro se* appeal followed.

In the months since, appellant has continued to file various *pro se* petitions and motions with this court and the lower court.

Appellant presents the following issues for our review:

1) Was the evidence insufficient as a matter of law to convict the appellant?

2) Is the appellant entitled to an evidentiary hearing or a new trial because of after-discovered evidence?

3) Did outrageous government take place in the lower court which resulted in the appellant's denial of a right to a fair trial and/or an impartial tribunal?

4) Did the lower court lack jurisdiction to proceed to trial while the appellant's Notice of Removal to federal court was still pending in the federal court?

5) Did the lower court err and abuse its discretion when it denied the appellant's Batson motion/challenge?

6)      Has the lower court denied the appellant a meaningful review of all assignments of error and therefore, made a full amd [sic] meaningful appeal impossible?

7)      Did the plaintiff (whether the state or DA) lack standing to to [sic] lawfully maintain the action/complaint in the lower court?

8)      Did the lower court lack subject-matter jurisdiction?

9)      Did the lower court abuse its' [sic] discretion in denying the appellant's motion for new trial because the verdict was against the weight of the evidence?

10)    Did the lower court err and abuse its' [sic] discretion in denying the appellant's oral motion for recusal/disqualification (or the appellant's requests for the trial judge's recusal)?

Appellant's brief at 4.

Appellant's first claim is that the evidence introduced by the Commonwealth at trial was insufficient to establish his guilt on all charges.

Relying on **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993), appellant argues that the evidence presented by the Commonwealth was "unreliable and contradictory," and therefore the guilty verdict cannot stand. (Appellant's brief at 21-37.)  Specifically, appellant points to the victim's

recantation at the preliminary hearing of his original identification of appellant.[1]

This court's standard of review when considering a challenge to the sufficiency of the evidence requires us to look at the evidence in a light most favorable to the verdict winner and determine whether the evidence presented, actual and/or circumstantial, was sufficient to enable a fact-finder to find every element of the crime charged, beyond a reasonable doubt. *Commonwealth v. O'Brien*, 939 A.2d 912 (Pa.Super. 2007).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition we note that the facts and the circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Id.* at 913-914, quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002) (citations and

---

[1] Ordinarily, of course, issues of credibility are left to the trier-of-fact, and it is not this court's function to re-weigh the evidence on appeal. Nevertheless, "courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976), citing *Commonwealth v. Bennett*, 303 A.2d 220 (Pa.Super. 1973) (and cases cited therein). Moreover, such claims have been considered as challenges to the sufficiency, not the weight, of the evidence. *Id. See also Karkaria*, *supra* (evidence insufficient where the complainant's testimony was inconsistent, unreliable, and uncorroborated).

quotations omitted). The finder-of-fact is free to believe all, some, or none of the evidence presented and is free to determine the credibility of the witnesses. **Commonwealth v. Dailey**, 828 A.2d 356 (Pa.Super. 2003).

Appellant's challenge to the sufficiency of the evidence presented to sustain his convictions rests primarily on the credibility of the victim's testimony. Appellant characterizes the victim's testimony as "full of inconsistencies." (Appellant's brief at 11.) The gist of appellant's claim is a challenge to the weight of the evidence, not its sufficiency. **See Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004) (distinguishing **Farquharson** where the witnesses' testimony differed somewhat on collateral matters but was consistent as to the crucial events surrounding the shooting itself). Furthermore, any alleged inconsistencies in the victim's testimony were for the trier-of-fact to resolve. The **Farquharson**/**Karkaria** line of cases, recognizing that, in exceptional circumstances, the Commonwealth's evidence can be so unreliable and contradictory that it is incapable of reasonable reconciliation and renders the jury's verdict insufficient as a matter of law, are inapplicable for the reasons discussed below.

The facts in **Karkaria**, relied upon by appellant, are distinguishable from the matter at bar. In **Karkaria**, our supreme court concluded that the testimony of the complainant, Sidney F., was so contradictory and unreliable that it was incapable of supporting a guilty verdict and, thus, insufficient as

a matter of law. **Karkaria**, although frequently cited by appellants on appeal to this court, is a rather unusual case and is limited to its facts.

In **Karkaria**, our supreme court confronted an adolescent witness' allegations that her stepbrother raped her regularly between April 9, 1984, and September 19, 1984, while he was acting as her babysitter. Noting that (1) the rape allegations suggested an ulterior motive because they coincided with the pending reconciliation between the victim's mother and stepfather, whom the victim disliked; (2) the victim's description of the sexual assaults were "disturbingly vague" and proffered only one factual scenario to describe all the alleged assaults; and (3) uncontroverted evidence contradicted the victim's testimony regarding the timing of the assault, the supreme court found the witness's testimony was "riddled with critical inconsistencies" and so unreliable that it was insufficient as a matter of law. **Karkaria**, **supra** at 1171.

In contrast with the extreme irregularities surrounding the victim's testimony in **Karkaria**, in this case, Swartz's testimony is not riddled with inconsistencies.[2] Although the victim recanted his identification of appellant

---

[2] Appellant also points out numerous alleged inconsistencies which are belied by the record. For instance, in his brief appellant states that the victim and Detective Waeltz "constantly contradict themselves and each other." (Appellant's brief at 34.) Appellant argues that the victim testified there was no redness on his neck and claims this statement contradicts the detective's statement that the victim had red marks on his neck. However, when we reviewed the pages of testimony appellant cites in support of this theory, his claim is belied by the record. (**Id.**; notes of testimony, 5/1/12 at 170-171, 275.)

at the preliminary hearing and sent a letter to the District Attorney and trial judge asking for the charges to be dropped, at trial the victim explained that these actions were the result of appellant's threats. The victim testified that during the attack, appellant referred to the victim by name and the victim recognized his voice. Appellant pulled the bandana down, and the victim recognized his face. Aside from the explained inconsistency, the victim's testimony was corroborated with the circumstantial evidence in this case -- the items recovered in appellant's car and residence, appellant's purchase of a gun similar to that used in the crime, and appellant's own words upon arrest. *Karkaria* is wholly inapposite. Appellant's sufficiency claim is patently meritless. The evidence was overwhelmingly sufficient to support the jury's verdict.

Appellant next argues that he is entitled to an evidentiary hearing or a new trial based on after-discovered evidence. (Appellant's brief at 37). After-discovered evidence is the basis for a new trial when it: 1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely for impeaching the credibility of a witness; and 4) is of such nature and character that a new verdict will likely result if a new trial is granted. *Commonwealth v. Boyle*, 625 A.2d 616, 622 (Pa. 1993); *Commonwealth v. Smith*, 540 A.2d 246

(Pa. 1988). Further, the proposed new evidence must be "producible and admissible." ***Smith***, 540 A.2d at 263.

Appellant argues that:

> the after-discovered evidence is that [the victim] was released early from jail to house arrest in violation of the agreement made with the state, because he had to testify "truthfully" at trial in order for him to be released to house arrest and if he did not testify "truthfully", and therefore committed perjury even one time, the agreement was supposed to have automatically vacated.

Appellant's brief at 37-38. It seems that appellant contends that the fact that the victim was released to house-arrest after testifying in his trial was after-discovered evidence that entitles him to a new trial. In his brief, appellant's argument is composed of different instances in which he believes the victim testified falsely.

We may quickly dispose of this claim. The victim's release from jail to house-arrest does not constitute "after-discovered evidence." As the Commonwealth avers, prior to trial the Commonwealth informed appellant that a deal was made between the Commonwealth and the victim that he would be released to house-arrest if he testified truthfully at appellant's trial. The victim testified about this agreement at trial. Thus, this was not after-discovered evidence, as it was known to both appellant and the jury during trial. Appellant's "discovery" of the victim's status of house-arrest does not alter the fact that he was aware of this agreement prior to trial. Additionally, as stated previously, after-discovered evidence that only

impeaches the credibility of a witness is not sufficient to justify the granting of a new trial. **Boyle**, **supra**. It is clear that the sole probative effect of appellant's alleged evidence would be merely to impeach the credibility of the victim. Accordingly, there was no new evidence that would change the outcome of the trial.

The third issue presented is whether there was misconduct by the trial court or the prosecution. Appellant presents a virtual laundry list of reasons averring why the actions of the trial court were so outrageous that he is entitled to a new trial. He also argues that the prosecution was malicious, as the victim did not testify against him in prior hearings. These arguments are meritless and belied by the record. As the Commonwealth aptly observed, the trial court demonstrated extreme patience while appellant represented himself at trial. The record and the trial court opinion indicate the court acted with caution to protect appellant's rights. (Trial court opinion, 10/21/13 at 2-9.)

The fourth contention is that the trial court lacked jurisdiction to try the case since he filed a notice of removal with the federal district court under 28 U.S.C. § 1446. (Appellant's brief at 52.) No relief is due and we find the record actually belies appellant's claim. The federal district court remanded appellant's case back to the state court in an order dated July 12, 2011. However, appellant's brief does not address this order. Rather, he only focuses on a second removal attempt which was not known to the trial

court until the end of trial. (Notes of testimony, 5/2/13 at 41-43.) Two weeks after the federal district court remanded the matter, appellant filed a *pro se* notice of removal, removing this same case to the United States District Court for the Middle District of Florida. The Middle District of Florida transferred the removal action to the Eastern District of Pennsylvania. Appellant's standby counsel informed the trial court that appellant had filed a petition in federal court for "notice of removal, a notice of Communist conspiracy to deprive him of his rights, and . . . a couple other things." (*Id.* at 42.)

Section 1446, which allows for removal of an action from state court to federal court, requires a party to file a petition for removal in federal court and promptly give notice to adverse parties and file a copy of the petition with the state court. 28 U.S.C. § 1446(e). Put simply, there is no evidence in the record demonstrating the Court of Common Pleas of Montgomery County lacked jurisdiction or that appellant complied with the notice provisions of 28 U.S.C. § 1446, procedure for removal from state court. Additionally, we note that this claim is moot as the second *pro se* notice of removal was denied in federal court on October 26, 2012.

Next, appellant asserts the Commonwealth violated his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), by utilizing a peremptory strike in a manner which discriminated against African-Americans. The trial court found that there was no *prima facie* case of discrimination based on the

fact that the prosecutor eliminated one African-American and there was not a pattern of discriminatory strikes.  We agree.

*Batson* describes a three-step process in evaluating claims of racial discrimination.  First, the defendant must make out a ***prima facie*** case that the prosecutor has employed race-based challenges.[3]  ***Commonwealth v. Cook***, 952 A.2d 594, 602-603 (Pa. 2008).  Second, the prosecution must then offer a race-neutral explanation for striking the juror.

> The second prong does not demand an explanation that is persuasive, or even plausible.  Rather, the issue at that stage is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

***Id.***  Third, the trial court must determine whether the defendant has proven purposeful discrimination.  "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." ***Id.*** at 603.

In the instant case, even assuming ***arguendo*** that appellant made a preliminary showing of a ***prima facie*** case of purposeful racial

---

[3] In order to establish a ***prima facie*** case that the Commonwealth has used peremptory challenges in a racially discriminatory manner, the defendant must show that he is a member of a cognizable racial or ethnic group and that the prosecutor has used peremptory challenges to remove persons of such racial group from the venire.  The defendant is entitled to rely on the fact that peremptory challenges are a jury selection practice that permits discrimination by those who have a mind to do so.  ***Commonwealth v. Jones***, 951 A.2d 294 (Pa. 2008).

discrimination, the record confirms the trial court's finding that the Commonwealth gave a credible race-neutral reason for excluding Juror Number 3, who is African-American, as is appellant. The Commonwealth had a race-neutral explanation: he was concerned that the juror, who was a pharmacist, may have had an issue with the victim who had a history of dealing with OxyContin. Both state and federal courts have held that nature or type of employment constitutes a valid, race-neutral explanation. **See Cook**, **supra** (affirming PCRA court's finding that nature of employment was a valid race-neutral reason). There is no basis to overturn the trial court's finding that there was no **Batson** violation.

The sixth issue concerns whether the trial court denied the appellant a meaningful appeal as the transcripts from two pre-trial hearings are missing; specifically, the bench warrant hearing on August 10, 2011, and a pre-trial conference on October 18, 2011. (Appellant's brief at 59.) Appellant directs our attention to **Commonwealth v. Shields**, 383 A.2d 844 (Pa. 1978), wherein portions of the trial transcript were lost that included potential prejudicial comments made by the prosecution during closing arguments. We agree with the Commonwealth that **Shields** is distinguishable as the unavailable transcripts in this matter were not related to appellant's trial but were "procedural hearings to move the case through the legal system." (Commonwealth's brief at 28.) "What happened during the bench warrant

- 15 -

hearing and pre-trial conference did not affect the ultimate outcome of [appellant's] case." (*Id.*)  No relief is due.

Appellant's seventh claim concerns whether the District Attorney's Office of Montgomery County had standing to prosecute the case and whether the Court of Common Pleas of Montgomery County had subject matter jurisdiction.  (Appellant's brief at 59.)  Appellant seems to be arguing that the trial court and the state are not the injured party, but rather Mr. Schwarz is the "real party of interest" and only the victim has "standing to maintain a complaint." (*Id.* at 60.)

"It is a well-settled principle of law that a crime is an offense against the sovereignty, a wrong which the government deems injurious not only to the victim but to the public at large, and which it punishes through a judicial proceeding in the Commonwealth's name." ***Commonwealth v. Malloy***, 450 A.2d 689, 691 (Pa.Super. 1982).  "The prosecutor's duty is to vindicate the interest of the Commonwealth not the interest of any particular individual." ***Commonwealth v. Price***, 684 A.2d 640, 642 (Pa.Super. 1996).  Though the same wrongful act may constitute both a crime and a tort, the tort is a private injury which is to be pursued by the injured party. ***Malloy***, ***supra***.  Criminal prosecutions are not to settle private grievances but are to rectify the injury done to the Commonwealth.  It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any

given case. "A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case." ***Commonwealth v. DiPasquale***, 246 A.2d 430, 432 (Pa. 1968).

Next, appellant argues that the trial court lacked jurisdiction. (Appellant's brief at 62-63.)  As the Commonwealth observes, the courts of common pleas have statewide jurisdiction in all cases arising under the Crimes Code.  ***See Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003) (distinguishing venue from subject matter jurisdiction and holding that "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code").  Appellant's claims are baseless.

Turning to the ninth issue, appellant claims that the verdict was against the weight of the evidence citing to the victim's inconsistent statement and alleged corrupt acts of the trial court.  (Appellant's brief at 63-66.)

> Appellate review of a weight claim ***is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.***  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was

not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in the original) (citations omitted).

We cannot find that the trial court abused its discretion when it denied appellant's weight of the evidence claim. It was the function of the jury as the finder-of-fact to evaluate the evidence and determine the weight it should be given. The trial court reasoned that the verdict rendered did not shock its conscience. (Trial court opinion, 10/21/13 at 15.) The victim testified that he recanted his original identification during the preliminary hearing because appellant threatened him. He also testified that the letter he sent to the District Attorney's office was coerced by appellant. In addition to the victim's testimony, the Commonwealth presented five

witnesses corroborating the victim's account of what took place on April 3, 2011. The jury evidently found the Commonwealth's witnesses credible and chose not to believe appellant's version of the events. Based on our review, we find no abuse of the trial court's discretion in refusing to award a new trial based on the weight of the evidence.

The remaining question for our review is whether the Honorable Joseph A. Smyth abused his discretion when he failed to recuse himself. "[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned." *Commonwealth v. Cain*, 29 A.3d 3 (Pa.Super. 2011), quoting *Commonwealth v. Darush*, 459 A.2d 727, 731 (Pa. 1983). The argument in support thereof accuses the trial court of perjury, bias, obstructing justice, witness tampering, and fraud. (Appellant's brief at 66-70.) There is nothing in the record, aside from appellant's claims, to suggest that the trial court should have recused itself. Rather, as the Commonwealth notes, Judge Smyth consistently attempted to explain the legal process to appellant who steadfastly refused to cooperate.

Judgment of sentence affirmed.[4]

J. S33002/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2014

---

[4] Appellant's two *pro se* motions to apply the doctrine of judicial notice, filed July 11, 2014 and July 18, 2014, are denied.

- 20 -