STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RANDOLPH CASEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 21, 1978—Decided March 20, 1978.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Kalman Harris Geist* argued the cause for appellant.

*Mr. William F. Lamb,* Deputy Attorney General, argued the cause for respondent (*Mr. John Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey, on the brief).

PER CURIAM. Defendant appeals his convictions of possession of a controlled dangerous substance (*N. J. S. A.* 24:21–20) and possession of such substance with intent to distribute (*N. J. S. A.* 24:21–19(a)(1)) contending that (1) the trial judge should, on his own motion, have entered a judgment of acquittal following presentation of the State's case; (2) the trial judge erroneously instructed defense counsel to refrain during summation from urging the jury to draw an adverse inference from the nonappearance of one

Albert Briggs as a State's witness and erroneously rejected defendant's request that the judge charge the jury as to the availability of such an inference, and (3) the trial judge erroneously denied defendant's motion for a new trial on the basis of newly discovered evidence.

The evidence at trial disclosed that Albert Briggs was engaged by the police as an undercover agent for the purpose of attempting to buy drugs in the area of Rubin's Tavern, a tavern which he patronized on a daily basis, being employed only a block away.

On March 3, 1977, following formulation of this plan, Briggs left the station house for Rubin's Tavern with a marked $10 bill given him for the purpose of purchasing drugs, after having been searched for narcotics, weapons or other contraband. Under surveillance as he operated, Briggs approached defendant and engaged him in conversation outside the tavern's entrance. Codefendant Brown was motioned by Briggs to join in the conversation. After this conversation the observing officers saw Briggs hand defendant what appeared to be money, after which Briggs and Brown entered the tavern; defendant remained outside.

The officers on surveillance then entered the tavern, talked to Briggs, and soon thereafter observed the codefendant Brown emerging from the men's room located at the rear of the tavern. Brown was apprehended and a search of his person disclosed a "dime bag" of heroin held in his hand. A search of defendant disclosed the marked $10 bill given him by Briggs. A later search of Brown at police headquarters disclosed five more glassine envelopes of heroin in his socks.

The foregoing events were recounted at trial by the two officers who observed them; Briggs, although subpoenaed by the State, did not appear to testify. Accordingly, at the termination of the State's case defense counsel requested a so-called *Clawans* charge advising the jury of the availability of an inference, unfavorable to the State, derived from the absence of Briggs as a witness for the State. The

court declined to so charge and further instructed defense counsel to avoid urging such an inference during summation.

The defense consisted of the testimony of one Austin who testified that he was present during Briggs' encounter with defendant in front of Rubin's Tavern and that he overheard the substance of much of the the conversation. According to Austin, Briggs first asked defendant for a match, after which defendant confronted Briggs with a demand that he pay defendant for breaking into defendant's mother's home and breaking her stereo set. Briggs then took Casey aside and they continued their conversation, which Austin did not hear. Austin denied, however, hearing any conversation relating to narcotics and stated that after the conversation Briggs walked down the street and the police pulled up.

After conviction defendant moved, pursuant to *R.* 3:20–1, for a new trial, supported by an affidavit by Albert Briggs, the missing State's witness, in which Briggs denied the whole of the transaction about which the two officers testified. Specifically, he denied his role as undercover agent, that he had been given a marked $10 bill with which to purchase narcotics, denied that he had spoken to defendant about narcotics or that he had passed the marked $10 bill to defendant. Although recognizing his signature on a statement given to the police, he denied knowing how his signature got on the statement because he remembered giving no statement. As to his conversation with defendant, the subject matter, according to Briggs, was with regard to a record player belonging to defendant's brother, and not about narcotics. Defendant's motion for a new trial based on this newly discovered evidence was denied.

■■ Defendant's first contention that the judge should on his own motion, have entered a judgment of acquittal is without merit. Viewing the State's evidence in its entirety, and giving the State the benefit of all favorable inference which a jury could reasonably derive therefrom, we conclude that the evidence was clearly sufficient to warrant submitting the issue of defendant's guilt to the jury. *State*

*v. Reyes,* 50 *N. J.* 454 (1967); *State v. Muniz,* 150 *N. J. Super.* 436, 440 (App. Div. 1977). If the State's evidence is such as to permit a finding of guilt beyond a reasonable doubt, a judgment of acquittal should not be entered.

Our review of the evidence persuades us that a jury could have found guilt to the requisite degree of certainty from the officers' testimony concerning the purpose for which Briggs was engaged to act as an undercover agent, the evidence that they gave him a $10 bill of a given serial number containing their initials, evidence that Briggs passed the bill to defendant after conversing with him, that defendant was found in possession of that bill, that codefendant Brown participated in the conversation and that after the bill was passed to defendant, Brown went to the men's room and emerged with one glassine envelope of heroin in his hand and five more concealed in his socks. From these facts a jury could conclude beyond a reasonable doubt that defendant and codefendant Brown were engaged in distributing heroin; that when Briggs passed the $10 bill to defendant it was for the purpose of purchasing a "dime bag" of heroin; that thereafter Brown went to the men's room to retrieve one bag from his cache of several others, and was in the process of delivering to Briggs the bag just purchased by him. The evidence, although of a circumstantial character, was clearly sufficient to withstand a motion for acquittal had one been made.

Defendant's contentions concerning the judge's rejection of his request to charge the availability of an unfavorable inference allegedly raised by Briggs' absence from the trial as a State's witness and the judge's instructions to counsel to abstain from urging such an inference to the jury during summation must be evaluated in light of several facts. First, Briggs was not unknown to Casey; rather, they had known each other for an extended period of time. According to Briggs' affidavit submitted with defendant's post-trial motion for a new trial, Briggs and defendant knew each other for at least ten years. Second, defendant had

been apprised of the fact that Briggs was an intended State's witness during discovery and well before trial. Counsel had also been provided with Briggs' inculpatory statement to the police. Had defendant advised his counsel that Briggs' statement was a lie, as Briggs' later affidavit averred, it is inconceivable that counsel would not have made strenuous efforts to secure Briggs' presence at the trial or, at the very least, to talk to him in advance of trial and then move for a continuance to enable him to secure his presence at trial. As the facts developed after trial indicate however, no effort whatever was made, in advance of trial, to locate and talk to Briggs despite the critical nature of his knowledge of events. Clearly, Briggs' nonappearance at trial could have as well provided the basis of an inference adverse to the defense, that Briggs was not summoned to testify because he could not deny the inferences raised by the State's strong circumstantial case. Third, the State did subpoena Briggs apparently on the conviction that he would testify in a manner consistent with his prior signed statement. His failure to appear, in these circumstances, evidenced no more than his reluctance to testify on the State's behalf for any number of reasons, including the effect his voluntary appearance for the State might have on his future well-being.

Hence, we conclude that the requested charge was properly rejected and defense counsel was properly admonished not to urge the jury during summation to draw such an inference because (1) Briggs was equally available or unavailable to the defense and the defense had an equal or greater need of his testimony; (2) the State unsuccessfully endeavored to secure his attendance as a witness, and (3) Briggs' nonappearance after subpoena evidences only his reluctance to testify and not that his testimony, had it been compelled, would be adverse to the State and contrary to his prior signed statement. In this posture of the case, we cannot conclude that the trial judge erred.

Finally, we conclude that the trial judge properly denied defendant's motion for a new trial. He concluded

that the proffered new evidence, Briggs' affidavit, was discoverable by reasonable diligence prior to trial and further that were Briggs to testify in accordance with his affidavit at a new trial, the result would be the same. See *State v. Puchalski,* 45 *N. J.* 97, 107 (1965) ; *State v. Artis,* 36 *N. J.* 538, 541 (1962). We agree with these conclusions.

As noted previously in another context, Briggs and defendant were not strangers to each other. Defendant knew that Briggs possessed knowledge critical to the case. Indeed, Briggs was arrested with defendant and codefendant Brown and defendant had to know that Briggs' information could aid him, if defendant were in fact innocent of the charge. Moreover, the defense was advised, during discovery that Briggs was to be a State's witness and, further, from his March 3 statement, what testimony the State expected him to give. With this knowledge, the defense made no effort whatever to secure his attendance as a witness for the defense, or even to interview him to determine if he would testify to the truth, as the defendant would have it, concerning defendant's lack of involvement in the possession or intended distribution of heroin. Clearly, the trial judge was fully justified in concluding, as he did, that defendant's failure to interview Briggs bespoke his knowledge that Briggs' statement was true, an implied admission of guilt:

I can't imagine in my mind if you were in any way advised by your clients that this statement was a total lie — I know Mr. Loukedis [defense counsel] you and your staff would have climbed up the wall for Mr. Briggs * * *.

The fact that Briggs may have been in Florida during a substantial period prior to the trial is not determinative. Defendant never knew this since no effort was made to locate him. And during the motion for the new trial, it was disclosed that Briggs had returned to New Jersey several days before trial. In any event, no effort was made by the defense for court aid in locating Briggs, no application was made for an adjournment of trial on the ground of diffi-

culty in locating him, and even after the defense discovered that he would not be appearing for the State, no continuance was sought to permit the defense to locate him and produce him as a defense witness. Instead, defendant sought to capitalize upon Briggs' refusal to testify by attempting to urge the jury to draw an adverse inference from his absence. Finally, when shortly after conviction defendant did take some steps to locate Briggs, they found him without difficulty. The only step necessary was to ask Briggs' father where his son was. He was located almost immediately thereafter and the affidavit proffered on the motion was the result. As noted by the trial judge:

[Briggs] was available to the extent that when the defendants wanted to get him, the defendants got him. But the defendants waited until after the trial because the defendants want[ed] two bites at the apple, not just one.

Clearly, reasonable diligence was not exercised in uncovering this new evidence prior to trial and one of the essential conditions to a new trial on newly discovered evidence was properly found not to have been fulfilled. *State v. Artis, supra.*

More fundamentally, however, we are convinced, as was the trial judge, that were Briggs to testify at a new trial in accordance with his affidavit (and we have serious doubts that he would), the result of the second trial would be no different from the first. The affidavit, when considered in the context of the evidence in this case, is totally incredible. Acceptance of its truth, *arguendo,* would leave defendant's arrest without explanation or foundation. It must be remembered that when defendant was arrested he was not found in possession of heroin; his arrest was predicated on Briggs' prearranged role as undercover agent endeavoring to purchase narcotics, on his possession of a marked $10 bill given him for that purpose, on the officers' observation of Briggs passing this bill to defendant, on Brown's participation in this transaction, together with Brown's attempted de-

livery of one bag of heroin, and finally on defendant's possession of the marked bill just given him by Briggs. Without these facts the officers simply would have had no basis or reason to arrest defendant; according to Briggs' affidavit, he was not doing undercover work, he was not given a marked $10 bill, and he passed no money to defendant. If all that is so, why was defendant arrested? Why were the officers even in the vicinity of Rubin's Tavern? To answer this a jury, believing Briggs' affidavit, would have to create an explanation out of whole cloth, perhaps hypothesizing an elaborate frame-up by the two police officers who testified, wherein they concocted this elaborate scheme after the arrest by fabricating Briggs' role as undercover agent, the marked $10 bill, Briggs' passage of the bill to defendant, and, most remarkably, Brown's coincidental presence on the scene with heroin in his possession. Finally, the jurors would have to believe that promptly after the arrest when they devised this scheme to validate this invalid arrest, they were lucky enough to obtain a statement to that effect from Briggs on the same day as the arrest took place. Defendant's position would not only be preposterous but would virtually defy belief.

Moreover, a jury would have to believe Briggs' testimony contrary to his signed statement given the very day defendant was arrested and would have to believe that, as defendant's friend who knew of his innocence, he came forward only after his conviction to testify contrary to the prior statement. Clearly, such testimony would be rejected and the prior verdict would undergo no change.

Affirmed.