**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3905-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALEXANDER RUIZ-NEGRON,
a/k/a ALEXANDER RUIZ, and
ALEXANDER RUIZNEGRON,

     Defendant-Appellant.

_____

        Submitted February 14, 2022 – Decided March 1, 2022

        Before Judges Sabatino and Rothstadt.

        On appeal from the Superior Court of New Jersey, Law Division, Criminal Part, Cape May County, Indictment No. 13-01-0043.

        Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

        Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Alexander Ruiz-Negron, who was convicted of armed robbery and other offenses at a 2014 joint trial with two codefendants, appeals the trial court's denial of his petition for post-conviction relief ("PCR") without an evidentiary hearing. We affirm.

As background, we incorporate by reference the facts and procedural history described in our unpublished 2017 opinion affirming on direct appeal the convictions of defendant and his two codefendants, Ramon Ruiz-Perez and Luis R. Garcia. State v. Ruiz-Negron, No. A–1993–14 (App. Div. March 10, 2017), certif. denied, 231 N.J.108 (2017). We summarized the prosecution's case as follows:

> The State's proofs at trial showed that four armed and masked men arrived at a gas station in Dennis Township at approximately 11:30 p.m. on June 13, 2012. There were two employees on duty: an attendant who was outside working the gas pumps, [Gurvinder Singh,] and a co-worker who was on duty inside the convenience store. Neither employee testified at trial. However, circumstantial evidence showed that the attendant was attacked and hit on the head with a gun by one of the robbers. The robbers left with cash and a black Toshiba laptop computer they removed from the gas station.
>
> The attendant reported the robbery to his boss, the owner of the gas station, and described what had happened. The police responded and began an

2

investigation. [The attendant also gave a statement to the police.] Video surveillance footage of the gas station confirmed the robbery had occurred, but the footage was not clear enough to enable identification of the robbers.

Shortly after the robbery, police officers applied for a search warrant in an unrelated drug investigation concerning the sale of heroin at [the] residence [of Luis Montalvo-Rodriguez] in Woodbine Borough. After obtaining the search warrant, the State Police generated what is called an "Operational Plan." The Plan stated that several of the robbery suspects were tied to narcotics activity at that location, and that "[i]t is possible that the execution of the search warrant today will reveal info[rmation] related to the robbery."

As authorized by the warrant, police officers searched the Woodbine residence. Among other things, they discovered and seized two laptops, one of which was a black Toshiba of the kind reported stolen from the gas station. The police then obtained a Communications Data Warrant ("CDW") to search the contents of the laptop. They found that the laptop contained photographs of the attendant and other persons of Indian descent, corroborating that it was the laptop stolen from the gas station.

[Id. at 3-4.]

The State's witnesses at trial were Montalvo-Rodriguez, an acquaintance of defendants and in whose house the laptop was found; Michelle Serrano, the sister of codefendant Garcia's girlfriend and a friend of Ruiz-Perez; Abdul Khan,

3

the owner of the gas station; and three law enforcement officers, including a detective who investigated the contents of the seized laptop.

Montalvo-Rodriguez testified that codefendant Ruiz-Perez brought the laptop, along with a wallet filled with a large quantity of coins, to his house. He also testified that he overheard parts of a conversation between the three defendants discussing a robbery of a "garage." Serrano testified that on the night of the robbery, Ruiz-Perez called her to ask if he could use her truck. Instead, she picked him up and he asked her to drive by the gas station. According to Serrano, when they drove by and saw the police cars, Ruiz-Perez told her to, "Go, go, go." Then they picked up defendant and "a chunky guy." She overheard them arguing about leaving someone behind.

Khan, the gas station owner, testified about Singh's call to him after the robbery. Khan also confirmed he had given the laptop to Singh as a gift. One of the detectives explained in his testimony how he deduced the laptop belonged to Singh, based on its contents.

The two employees who were victimized at the gas station, Singh and his coworker identified in the record as "Dharminder,"[1] were apparently in India at the time of trial and did not testify for the State.

---

[1] The record on this appeal does not specify the co-worker's legal name.

A-3905-19

The common theme of all three defendants at trial was that the State lacked any direct evidence they were the gas station robbers, and that the State's circumstantial evidence, including the stolen laptop, was insufficient to prove defendants' guilt. The defense did not call any witnesses, nor did any of the defendants testify. However, defense counsel, in tandem, endeavored to impeach the State's witnesses and other proofs.

Among other things, the defense urged that Montalvo-Rodriguez and Serrano, were biased because they had not yet been charged with serious drug offenses known to the State, and suggested this was the result of an agreement between them and the State in exchange for their cooperation and testimony against the defendants at this trial. The defense also underscored that Montalvo-Rodriguez suffered from schizophrenia, bipolar disorder, and memory loss.

Additionally, defense counsel argued the surveillance video of the gas station was filmed too far away to enable the identification of the robbers. They contended the video depicted four, not three, perpetrators at the scene. Defense counsel also highlighted that Singh told the police there were four robbers, three of whom he thought were Black and only one of whom Hispanic, yet there are only three defendants, and they are each Hispanic.

A-3905-19

The jury found all three defendants guilty of first-degree armed robbery, N.J.S.A. 2C:1-1(a)(1) (count one); second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a) (count two); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count three); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count four); third-degree theft, N.J.S.A. 2C:20-3 (count five); and conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1(a)(1) (count six).

As we noted in our first opinion, defendant was sentenced on count one[2] to an extended term of thirty-five years with eighty-five percent parole ineligibility period in accordance with the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and a concurrent extended term of fifteen years with a NERA parole disqualifier for the weapons charge on count three.

On direct appeal, we affirmed the convictions of all three defendants. However, we remanded for resentencing to correct the multiple extended term sentences that had been improperly imposed. On remand, the trial court revised the sentence for the weapons convictions to a ten-year term with a five-year parole disqualifier.

---

[2] All of the counts other than unlawful possession of a handgun (count three) merged into robbery.

A-3905-19

After the Supreme Court denied certification of his direct appeal, defendant filed a PCR petition in the trial court. In his petition, as amplified by assigned counsel, defendant argued his trial attorney was unconstitutionally ineffective in several respects. Specifically, as is germane to the present appeal, defendant argued his trial counsel was ineffective in: (1) not moving to sever his trial from the two codefendants; and (2) not requesting the trial judge to give the jury an absent-witness charge under State v. Clawans, 38 N.J. 162, 170-71 (1962), concerning the State's failure to call Singh.

After considering defendant's submission and oral argument, the PCR judge denied defendant's petition, issuing a written decision on January 8, 2020. In his ruling, the PCR judge did find that defendant had shown, under the first prong of Strickland v. Washington, 466 U.S. 668 (1984), that his trial counsel had been remiss in not moving for severance, but that defendant had failed to show under the second prong of Strickland that he had been actually prejudiced by the omission. The PCR judge found no deficient performance with respect to the Clawans issue. The judge found no need to conduct an evidentiary hearing because defendant failed to present a prima facie case for relief.

This appeal from the PCR denial followed. Defendant raises the following points in his brief:

A-3905-19

POINT I

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A <u>PRIMA FACIE</u> CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO REQUEST A <u>CLAWANS</u> CHARGE.

POINT II

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A <u>PRIMA FACIE</u> CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO MOVE FOR A SEVERANCE FROM A MANIFESTLY CULPABLE CODEFENDANT.

For the reasons stated in Part I. of this opinion, neither of these arguments is persuasive.

I.

We apply familiar legal principles in reviewing defendant's claims that his trial attorney was ineffective under the Sixth Amendment of the United States Constitution. To establish a likelihood of success under the <u>Strickland</u> two-part test for assessing such an alleged constitutional deprivation, a defendant must show: (1) counsel's performance was deficient and that he was (2) actually prejudiced by counsel's alleged deficient performance. <u>Strickland</u>, 466 U.S. at 687; <u>State v. Fritz</u>, 105 N.J. 42, 52 (1987).

8

A trial counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Counsel has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and the failure to do so constitutes deficiency. Id. at 691.

Prejudice to a defendant is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Fritz, 105 N.J. at 52 (citing Strickland, 466 U.S. at 694).

Under State v. Preciose, 129 N.J. 451, 462-63 (1992), an evidentiary hearing should be held to resolve ineffective assistance of counsel claims if, viewing the disputed material facts in the light most favorable to the petitioner, there is prima facie support for post-conviction relief. R. 3:22-10(b). To establish a prima facie case, however, "defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." Ibid.; see also State v. Porter, 216 N.J. 343, 347, 354-56 (2013).

9

We review the PCR judge's analysis of the Strickland factors de novo, because they concern the application of the law to the facts. State v. Nash, 212 N.J. 518, 540-41 (2013).

A.

The first issue presented concerns trial counsel's decision to not request a Clawans jury charge on the State's failure to call Singh, the gas station attendant who was assaulted, as a trial witness. We agree with the PCR judge that the circumstances here did not warrant such a jury charge, and that no constitutional deprivation occurred.

Decades ago in Clawans, the Supreme Court authorized an instruction advising jurors, in appropriate circumstances, that they are permitted to draw an adverse inference against a party that fails to call a witness that (1) the party had the power to produce and (2) whose testimony would have been superior to the testimony used by that party to prove a fact the missing witness could have proved. Clawans, 38 N.J. at 170-71. The rationale for such an adverse inference is based upon a premise that the party failed to call the witness because doing so would lead to the unveiling of unfavorable facts to the party. Ibid.

In the ensuing years since Clawans was decided, the use of such an adverse inference charge has become less favored. See, e.g., State v. Hill, 199

10

N.J. 545 (2009) (holding <u>Clawans</u> charges generally should not be used against criminal defendants because a negative inference against defendant's calling of a witness interferes with the jury's ability to maintain that the defendant is innocent until proven guilty, but also pointing out more general concerns about the underlying rationale of the charge); <u>State v. Velasquez</u>, 391 N.J. Super. 291, 307-08 (App. Div. 2007) (noting that "caution" in giving the charge "is appropriate because of the variety of reasons, unrelated to fear of the content of the testimony, that may more reasonably explain a litigant's decision to refrain from producing a witness").

Case law has held that the adverse inference is inapplicable, and the <u>Clawans</u> charge should not be given, in a variety of circumstances. Among others, these circumstances include when the "missing" witness: (1) is available to testify and can be produced by either side, <u>see</u> <u>State v. Marks</u>, 201 N.J. Super. 514, 537 (App. Div. 1985); (2) was attempted to be located by the proffering party but was not "found," <u>see</u> <u>State v. Casey</u>, 157 N.J. Super. 311, 316 (App. Div. 1978); and (3) did not respond after being subpoenaed, <u>see</u> <u>ibid.</u>

With this legal backdrop in mind, here is the pertinent sequence of events that frames the <u>Clawans</u> issue in this case.

A-3905-19

At trial, the State did not call Singh, whose laptop was stolen during the robbery and found in Montalvo-Rodriguez's apartment. During its opening statement, the prosecution told the jury it would not be hearing from Singh because he was "not available."

Defendant's counsel addressed the same topic in his opening to the jury, stating, "Number one, you're not going to hear or see from a victim." He continued:

> So, you're not going to hear from a victim and he's unavailable because the State can't produce him, not because of any other reason. The State couldn't get him here to trial. You're not going to hear from the other eyewitness, who was apparently working at the store next door. Not available either.

Later, during the direct examination of Sergeant Mark Siino, a New Jersey State Police Officer who was dispatched to the robbery crime scene, the prosecutor asked Siino questions about what Singh said to him while he was there. At that point, an attorney for one the codefendants objected:

> Judge, this is basically a statement by a State's witness that should be here to testify. He's the only witness that can testify about what happened and the State couldn't produce him. Now they're trying to get it in basically through a police report and that's highly prejudicial to my client.

The judge overruled the objection and ruled that the testimony could come in under the excited utterance hearsay exception, N.J.R.E. 803(c)(2).[3]

During the State's direct examination of Khan, the gas station owner, the prosecutor began to ask him questions about what Singh told him the night of the robbery when Singh called him from the gas station. Defendant's counsel objected, asserting,

> [T]he State should not be permitted in every case, and I've made this objection, when they cannot produce the witness – the victim, they are trying anything they can do to bootstrap in everything's an excited utterance from him. That helps their case . . . . [H]ow many excited utterances can there be in one night.

This objection was overruled, and the judge again allowed Singh's hearsay declarations to come in under the excited utterance hearsay exception, N.J.R.E. 803(c)(2).[4]

After the State rested its case, defense counsel initially told the court they "might" request a Clawans charge. The next day at the jury charge conference, however, defense counsel adopted a different strategy. Counsel told the court defendants would not request a Clawans charge, as long as they could "reference

---

[3] The hearsay ruling was appealed and we affirmed it. Ruiz-Negron, slip op. at 14-17.

[4] This particular hearsay ruling was not appealed.

the fact that the State didn't produce certain witnesses" in their closing.  The judge acquiesced to that request.

Accordingly, during summation, defendant's counsel said:

> The victim, the alleged victim of the crime is not here. Now, there's no real explanation about why the victim is not here.  I think Detective Devine may have said he went back to India, but what Detective Devine also said was the day after the alleged crime . . . he interviews Mr. Gurvinder Singh.
>
> He never talks to him or sees him again.  Here we are a year and nine months, maybe, from that time.  No wonder he's not here.  So, I ask you to pay attention to that key thing that's not here, no victim.

The only mention of Singh's absence at trial in the State's closing argument was, "We don't have anyone to say that's my laptop, but we have direct evidence of a man who says I bought it, here's the receipt."

On appeal, defendant contends, under prong one of Strickland, that his trial counsel was deficient in not requesting the court to issue a Clawans jury charge.  As for prong two of Strickland, defendant contends he was actually prejudiced by this lack of a Clawans request.  We disagree with both contentions.

The circumstances presented did not plainly require a Clawans charge. The State asserts that Singh  was "not available" at the time of trial.  During direct examination, one of the detectives testified "Mr. Singh either moved back

– moved away to India, I believe[.]" Defendant has presented no evidence to the contrary. Nor has defendant shown that Singh's presence likely would have been successfully procured through international subpoena procedures. The PCR judge reasonably determined that Singh was not a witness within the State's control, let alone its exclusive control. Hence, the predicates for a Clawans charge are not present.

Even if, for the sake of discussion, Singh hypothetically was somehow within the State's exclusive control, it should not be assumed the trial court would have issued a Clawans charge. As we have noted, the charge has been the subject of criticism in more recent case law. It is speculative to infer that the prosecution would have refrained from calling Singh if he had been available, or that his testimony as a whole would have been unhelpful to the State.

We recognize that Singh's description of the robbers to the police included only one Hispanic male, not three. But that discrepancy does not mean the rest of his testimony would have aided the defense. For instance, Singh might have graphically recounted to the jury the terror of being robbed at gunpoint. He also might have confirmed that the stolen laptop was his, and that the images found on it were personal to him. Defendant has not shown that Singh necessarily

15

would have been a witness who, on balance, would have been adverse to the State's case. Indeed, counsel's decision to forego a request for a Clawans charge, on the condition counsel could spotlight during summations Singh's absence as a witness, appears to have been a reasonable strategic choice. Such strategic choices do not support a finding of deficient performance. Fritz, 105 N.J. at 54 (1987); see also State v. Echols, 199 N.J. 344, 358 (2009).

Defendant also has failed to establish the second prong of Strickland, i.e., actual prejudice. The State's proofs in this case, even without Singh's testimony, were ample to establish defendant's guilt. At most, a Clawans charge would have been a subsidiary aspect of the jury instructions. The case largely turned on the credibility of the testifying witnesses and on the import of the surveillance video and the stolen laptop, matters which would not have been the subject of a Clawans charge.

In sum, defendant fails to present a prima facie case of unconstitutional ineffectiveness on the Clawans charge issue. No plenary hearing was required. Preciose, 129 N.J. at 462.

B.

We are likewise unconvinced that defendant established a prima facie Strickland violation stemming from the lack of a motion by his trial counsel to

16

sever his case from the two codefendants' cases. Although the PCR judge found the first prong of Strickland was met on this issue,[5] the second prong of actual prejudice was not.

It must be remembered that the three codefendants were all charged with participating in the same gas station robbery and were charged with the same litany of crimes. One of those charges was conspiracy to commit armed robbery. As a general matter, conspiracy cases are often tried at once, with all of the alleged co-conspirators joined as codefendants, because of the overlapping evidence of acts in furtherance of the alleged conspiracy. See, e.g., State v. Marshall, 148 N.J. 89, 138 (1997); State v. Sanchez, 143 N.J. 273 (1996). In addition, there is a patent risk of inconsistent verdicts if each co-conspirator is tried one at a time, not to mention the duplication of witnesses and additional consumption of resources.

Although the PCR judge faulted defendant's trial counsel for not making a severance motion, the judge did not find that such a motion, if it had been made, necessarily would have been granted. As the PCR judge correctly recognized, there is a general preference for joinder of co-perpetrators. State v. Brown, 170 N.J. 138, 160 (2001). The pertinent standards for severance under

---

[5] The State has not cross-appealed that determination.

the case law would have considered, among other things, whether the defenses of the codefendants would have been antagonistic. State v. Buonadonna, 122 N.J. 22, 24-25 (1991). Here, the trial record reflects the three defense counsel largely worked in tandem to attempt to discredit the State's witnesses and its other evidence. There was a "strength in numbers" tactical upside to the defense's approach. All of the three codefendants denied any involvement in the robbery. They did not attempt to shift blame to one another. Their counsel's arguments during summations generally reinforced the arguments of the other defense counsel.

Defendant maintains the laptop evidence was unduly prejudicial to him, asserting that if he had been tried individually the court would have excluded that evidence. His premise is unfounded.

Even though the stolen laptop was found at the home of Montalvo-Rodriguez rather than his own home and reportedly taken there by Ruiz-Perez, the State nonetheless would have had a strong argument that the laptop was admissible against defendant as "intrinsic" proof of a completed robbery in which he allegedly took part. State v. Rose, 206 N.J. 141, 177, 180 (2011). The laptop was the fruit of a crime in which all three codefendants took part. The fact this evidence was even more damaging to Ruiz-Perez does not mean it was

18

inadmissible against the other two defendants. Disparities in the weight of the evidence with respect to each individual defendant are not per se grounds for severance. State v. Laws, 50 N.J. 159, 175-76 (1967); State v. Scioscia, 200 N.J. Super. 28, 42-43 (App. Div. 1985).

In addition, the trial judge issued a model charge advising the jurors to consider the State's evidence with respect to each defendant individually.

On the whole, we discern no actual prejudice flowing from defendant's trial attorney's willingness to proceed with a joint trial. A severance motion would likely have failed. And if it had succeeded, defendant would not manifestly have been better off. There was no prima facie showing under prong two to require an evidentiary hearing on this issue, either. Preciose, 129 N.J. at 462.

For these many reasons, we affirm the denial of the PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3905-19